*55 Vroom.*                 In re Julius Grunow.

IN THE MATTER OF THE APPEAL OF JULIUS GRUNOW
FROM AN ORDER ADJUDGING HIM GUILTY OF CON-
TEMPT OF THE BERGEN OYER AND TERMINER
COURT.

Submitted July 3, 1912—Decided March 4, 1913.

1. A news reporter, who wrote and published a libelous article in
   a newspaper, who, in testifying before a grand jury in a proceed-
   ing instituted against the newspaper and others for publishing
   the same, may be proceeded against and punished for contempt,
   for refusing to answer a question propounded by that body, the
   purport of which was to ascertain who furnished the libelous
   matter and participated in its publication, the witness having
   stated that he wrote the article upon information obtained from
   various persons.
2. The fact that the witness was a reporter for the newspaper and
   received the information in that capacity afforded no legal ex-
   cuse for such refusal.

On appeal from the Bergen County Oyer and Terminer
Court.

Before Justices SWAYZE, VOORHEES and KALISCH.

For the state, *Wendell J. Wright.*

For the appellant, *George L. Record* and *Merritt Lane.*

The opinion of the court was delivered by

KALISCH, J. The appellant was adjudged guilty of con-
tempt by the Court of Oyer and Terminer of Bergen county
and fined $25. The facts out of which the appellant's con-
tumacy arose are briefly these: The appellant is a newspaper
reporter connected with the "Jersey Journal," a newspaper
published in Bergen county. On the 12th of December, 1911,
there appeared in the "Jersey Journal" an article under the
caption: "Graft Charges Starts Talk of a Commission,"
which in substance charged that one of the Ridgefield Park
village trustees named Ayers had, in open meeting of the

board of trustees, charged that a claim of $703 for grading presented by surveyor S. J. Shaw had been paid for in a previous bill rendered. Grunow was subpœnaed to appear before the Bergen county grand jury of the December Term, 1911, and after having been duly sworn testified before that body that he was the author of the article in question. He was then asked who gave him the information that led to the writing of the article, but he refused to answer. This question was not propounded to the witness until he had testified that he had written the article upon information obtained from other persons. It was the appellant's refusal to answer this question which moved the grand jury, through the prosecutor of the pleas, to apply to the Court of Oyer and Terminer for an attachment against the appellant for contempt of court. A rule to show cause was issued and upon examination of the defendant who appeared in answer to the rule, it appeared that he was sworn and examined in a certain matter of the State v. Evening Journal Association et al., then and there being under investigation by the said grand jury; that he testified before said body that he knew the name or names of the person or persons who furnished the information upon which he wrote the article, and that he refused to testify as to the name or names of such person or persons who furnished the information upon which the said article was prepared. The appellant gave as his reason for refusing to answer the question, the following: "I declined to give the sources of my information or the names of any person or persons who gave me any information about it and gave as my reason for such refusal that I was a newspaper reporter and therefore could not give up my sources of information." In effect he pleaded a privilege which finds no countenance in the law. Such an immunity, as claimed by the defendant, would be far reaching in its effect and detrimental to the due administration of law. To admit of any such privilege would be to shield the real transgressor and permit him to go unwhipped of justice.

The appellant further claims that there was no proceeding then pending before the grand jury which made the testimony

relevant and material. It appears that the grand jury was conducting an investigation regarding the publication of the article in the "Jersey Journal." The article upon its face is libelous. All those who were in any way concerned in its publication were offenders against the law. It was both material and relevant to the investigation had before that body to ascertain who were concerned in the publication of the article. By what has been said it is not to be inferred that a grand jury may not, without any complaint made before it, upon its own initiative investigate matters relating to the conservation of the public peace, and to the protection of the health, morals and safety of the community, and in this regard subpœna witnesses and examine them.

The appellant challenges the good faith of the grand jury in making the investigation and the proceedings thereunder, but even if this were conceded it does not afford any legal excuse for the appellant to refuse to answer the question propounded to him by that body.

Judgment will be affirmed.