STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. MAX
SILVERMAN, PLAINTIFF IN ERROR.

Submitted December 6, 1923—Decided November 15, 1924.

1. An instruction by the trial court to the jury that "if either
counsel for the state or counsel for the defense, in their sum-
mation, have referred to matters extraneous to the issue, or
have drawn inferences which are not justified in the case, of
course, gentlemen, you must and should disregard counsels' sum-
mation," is not susceptible to the meaning that the jury should
disregard the summation of both counsel without an obvious
distortion of the sense conveyed by such words.

2. It is a settled rule that a witness may be impeached in any
subsequent trial, civil or criminal, by self-contradictory testi-
mony given by him before the grand jury, and it was therefore
reversible error for the trial court to prevent the complaining
witness being asked, upon cross-examination in the trial of an
indictment for embezzlement, whether he remembered telling the
grand jury that defendant had offered to return to him the
money alleged to have been embezzled, but that he had refused
to accept it.

On error to the Essex County Court of Quarter Sessions.

Before Justices KALISCH and KATZENBACH.

For the plaintiff in error, *Braelow & Tepper.*

For the defendant in error, *John O. Bigelow.*

The opinion of the court was delivered by

KALISCH, J. The plaintiff in error was convicted of the
crime of embezzlement in the Essex County Quarter Ses-
sions and judgment having been pronounced upon him on
such conviction, he brings the record and proceedings before
this court for review, on writ of error, by assignments of
errors founded upon bills of exceptions, and, also, under the
one hundred and thirty-sixth section of the Criminal Pro-
cedure act.

The indictment charged the defendant below, in a single count, that he did on the 15th day of December, 1921, being the bailee, agent and servant of William Gulka, and as such, being entrusted by him with the care of certain moneys of the said William Gulka, to wit, money of the value of one thousand dollars ($1,000), did then and there fraudulently and unlawfully take and convert the same to his own use, contrary, &c.

The indictment was based on section 184 of the Crimes act. 2 *Comp. Stat., p.* 1799. The section relates to conver-- sion of property by consignee, factor, bailee, agent or servant. As the legal status of each of the aforementioned, by reason of the nature of his employment, differs, the legal principle, governing the duty and liability arising out of such rela- tionship, also differs. If it was uncertain in what fiduciary relation the accused committed the offense, then correct pleading required that each relationship should be made the subject of a separate count. Although no objection was made against this fault in the indictment, and, therefore, cannot be availed of by the plaintiff in error, it was deemed ad- visable to take notice of this grave fault in the pleading, so as to prevent a recurrence of it in the future, which loose practice, if properly taken advantage of, might lead to a miscarriage of justice.

The facts, as developed by the testimony, are these: On December 15th, 1921, William Gulka, the complaining wit- ness, made an agreement with the accused, whereby the latter undertook to procure bail for one George Toos, in the sum of $3,000, upon the payment of a fee of $210. Gulka gave the defendant $1,000, from which sum the latter deducted his fee of $210, with the distinct understanding between them that the balance of $790 was to be retained by the latter, as collateral security, until two criminal charges made against Toos, one in Pennsylvania and the other in Hackensack, in this state, were disposed of. It further appeared that a week later the defendant procured the National Surety Company to bail Toos on the charge made against him in Hackensack. In the month of February, of the following year, Toos having

been found guilty of the charge laid against him in Hackensack, judgment was pronounced and the bail was discharged; Gulka thereupon made a demand upon the defendant for the return of the $790, when the latter insisted that Gulka must produce satisfactory evidence of the cancellation of the bail liability in the State of Pennsylvania and in Hackensack. The complaining witness claimed that he procured the cancellations as required of him and demanded the return of the $790 dollars held by defendant, as collateral security, which demand was refused. The defendant denied that both cancellations had been delivered to him, and that he had repeatedly offered to return the money to Gulka, who refused to accept the same. This factual question was in dispute and was for the jury.

The first point made in the brief on behalf of the plaintiff in error is that the trial judge erroneously charged the jury, as follows: "If either counsel for the state or counsel for the defense in their summation have referred to matters extraneous to the issue or have drawn inferences which are not justified in the case, of course, gentlemen, you must and should disregard counsels' summation."

The contention is that this instruction deprived the defendant of his constitutional right to have the assistance of counsel in his defense. There is no merit in this contention, for it nowhere appears in the record that the plaintiff in error was deprived of the assistance of counsel, but, on the contrary, the record shows that the defendant was represented by counsel throughout the trial of the case. But it is said that if the instruction is read in its ordinary sense it was equivalent to a direction to the jury to ignore all of counsels' summing up, both on behalf of the state and of the defendant, for the fault of either one. It seems to us that while this portion of the charge might have been more explicit, nevertheless, we think, that counsel's contention, that it was misleading, in that it had a tendency to impress the jury that if either counsel of the state or counsel of the defendant had referred to, and summed up on, matters which were foreign to the issue and facts of the case, the jury should disregard

the summations of both counsel, is not only not warranted, but is an obvious distortion of the ordinary sense conveyed by the language used.

The second ground relied on for reversal and argued in the brief of counsel of the plaintiff in error relates to the rulings of the trial judge in excluding questions put on behalf of the plaintiff in error to the complaining witness, Gulka, on cross-examination, for the purpose of contradicting him and thereby testing his credibility.

The overruled questions were as follows: "*Q.* You remember the other occasion when you appeared before the grand jury on this case? *Q.* Do you remember testifying before that grand jury? *Q.* Do you remember telling that grand jury——" Here the question was abruptly interrupted by the trial judge, who said: "I have ruled that anything he said before the grand jury is not to be divulged here."

"Mr. Braelow—If the court please, for the purpose of the record, may I state, in asking these questions, my purpose is to show—— The Court—A contradiction? Mr. Braelow—Yes, your honor. The Court—I will anticipate that and rule that anything he said before the grand jury will not be divulged here, because it is a secret proposition. Mr. Braelow—Will your honor permit me an exception? The Court— Yes." The question that was interrupted is set out in the assignment of error and in the specification of causes for reversal, as follows: "Do you remember telling that grand jury that the defendant had offered to return to you $790, but you refused to accept the same?"

The situation presented here is that the plaintiff in error was denied the right to cross-examine a witness on an essential matter pertaining to his defense. It was incumbent upon the prosecution, in order to convict the defendant to prove that he fraudulently converted the money. The defendant was therefore entitled to ask the question of the witness: "Do you remember telling that grand jury that the defendant had offered to return to you $790, but you refused to accept the same?" The witness might have answered

that he did or that he did not. If he had answered in tne affirmative, the admission would tend to affect his credibility.

In *Regina* v. *Gibson*, 1 *Car. & M.* (41 *Eng. Com. L.*) 364, a witness for the prosecution was asked in a case of felony on cross-examination whether he had not stated certain facts before the grand jury and there being an objection raised, Parke, B. said: "I see no objection to the question, and I think the witness is bound to answer it."

It is true that in the present case the question put to the witness was not completed, but its completion was prevented by the learned judge, who declared in the most emphatic manner that he would not allow any questioning for the purpose of laying a foundation for the offer of contradictory testimony coming from grand jurors.

This was error prejudicial to the defendant, which necessitates a reversal of the judgment.

The learned trial judge in excluding the proffered testimony proceeded upon the theory that such questioning was in violation of the secrecy of the deliberations of a grand jury. No well considered case can be found that goes to the length that a witness may not be properly asked whether he had not testified differently as to the fact in controversy before the grand jury. The admissibility of the question is not dependent upon the circumstance that if the witness should deny that he had so testified, a grand juror may not be properly called to contradict him. But there is no such policy of the law as was applied in this case. The remarks of Mr. Justice Bigelow in *Commonwealth* v. *Hill*, 11 *Cush.* 137 (at *p.* 140), are pertinent and illuminating.

The learned judge said: "The sole ground of objection is, that it is against public policy and the fundamental principles upon which the institution of the grand jury is based, to admit any member of that body to testify to any fact which has transpired before them in the course of their investigations. But this is stating the rule much too broadly. The extent of the limitation upon the testimony of grand jurors, is best defined by the terms of their oath of office, by which 'the commonwealth's counsel, their fellows, and their

own, they are to keep secret.' They cannot, therefore, be permitted to state how any member of the grand jury voted or the opinion expressed by their fellows or themselves upon any question before them, nor to disclose the fact that an indictment for a felony has been found against any person, not in custody or under recognizance, nor to state in detail the evidence on which the indictment is founded. 1 *Greenl. Ev.,* § 252; *Freeman* v. *Arkell,* 1 *Car. & P.* 135, 137; *Huidekoper* v. *Cotton,* 3 *Watts* 56. To this extent the free, impartial unbiased administration of justice requires that the proceedings before grand juries be kept secret. By no other means can perfect freedom of deliberation and opinion among jurors be effectually secured, and the ends of an energetic administration of criminal justice surely attained. But we are not aware that the sanction of secrecy has ever been extended beyond this; we know of no authority which carries the rule of exclusion further, and we can see no ground of policy or sound reason for its extension."

In *State* v. *Bovino,* 89 *N. J. L.* 586, our Court of Errors and Appeals, speaking through Mr. Justice Garrison (at *p.* 588), said: "Counsel for plaintiff in error argues that upon grounds of public policy it was error to admit proof of testimony given before the grand jury, citing as an authority in this state. *Imlay* v. *Rogers,* 7 *Id.* 347. Upon comprehensive examination of this question, Professor Wigmore reaches the conclusion that 'It is now universally conceded that a witness may be impeached in any subsequent trial, civil or criminal, by self-contradictory testimony given by him before the grand jury.'

"In this conclusion of Professor Wigmore we concur, even as to the prophetic note in which he says: 'The early doubt in New Jersey, would to-day be repudiated. *Imlay* v. *Rogers,* * * *.' If the case is to be regarded as an authority for the proposition that the testimony of a witness before the grand jury cannot be put in evidence for the purpose of contradiction and impeachment, it is against sound reasoning and the overwhelming weight of authority and must be definitely regarded as overruled."

Having reached the result that the judgment must be reversed we have not considered the trial errors complained of and argued under the additional nine points of the brief of the plaintiff in error, which points include that the verdict was contrary to the weight of the evidence.

Judgment is reversed and a *venire de novo* is awarded.