Joseph Schwartz of Atlantic County was adjudged guilty of contempt of the Atlantic County Court of Oyer and Terminer. The alleged offense arose out of these circumstances: Mr. Schwartz was subpoenaed to appear before the October term, 1943, grand jury of Atlantic County on two occasions, November 3d and November 17th, 1943. The grand jury was investigating gambling, having been instructed to do so by the Supreme Court Justice who presides in that district. The charge to investigate gambling was delivered upon the request of the Prosecutor of the Pleas. The process first served upon Mr. Schwartz (subpoena duces tecum) required him to appear personally and bring with him "all number slips, coupons or tickets which have come into your possession since May 11th, 1943, to date and particularly * * * all number slips, coupons or tickets which came into your possession on or about October 5th, 1943." Schwartz did not bring the things called for. He explained that he no longer had them. A second such subpoena was served upon the witness for his attendance on *Page 81 
November 17th, and required him to produce "any documentary information or other papers which you may have in your possession concerning any violation of the criminal law which has come to your knowledge or attention." In obedience thereto he produced certain exhibits, to wit, a "few files" which included cards and advertisements announcing "Bingo" games at certain clubs, church-halls, lodges, political clubs, c., newspaper articles, a list of untried indictments, and like data, some of which he delivered to the Prosecutor of the Pleas in the presence of the grand jury. When asked to name the persons who had turned over to him the "number slips" used for gambling in the "numbers game," which previously had been called for, the witness declined to answer. The question was repeated in various forms. The witness remained firm in his refusal to answer. He advanced these reasons to justify his attitude: that he had pledged himself not to divulge the names of his informants; that he would not go into the matter generally while the prosecutor and his staff were present. In this latter connection he said: "I have strong belief that there is corruption in the operation of both city and county law enforcements." The grand jury conferred and determined unanimously that the prosecutor and his assistant should not be excluded from the grand jury room. The witness was so advised and then and there was invited to give the information which the grand jury wished to have, whereupon the witness replied: "Mr. Foreman, I decline to give the information." At this stage it is patent that the witness was in fact recalcitrant. It remains to examine into whether the reasons which he advanced justified his attitude as a matter of law.
The prosecutor prepared a petition embodying these facts and obtained from a judge of the Oyer a rule calling upon Mr. Schwartz to show cause before that court why he should not be adjudged in contempt "of the grand jury in and for the County of Atlantic * * *" for refusing to answer these questions. On the return of the rule witnesses for the state and for Schwartz testified and the court found Schwartz guilty of contempt and sentenced him to be committed to the county jail for a period of five days, which sentence was suspended. *Page 82 
Our statute (R.S. 2:15-1) delineates the several matters and things that shall constitute contempt. These several acts are stated in three divisions — a, b and c. The first two delineations of what shall constitute a contempt (a and b of the statute, supra) are not relevant. The third (c) reads: "Disobedience or resistance by any court officer, or by any party, juror, witness or other person to any lawful writ, process, order, rule, decree or command of the court."
The appellant contends that the quoted words are also inapplicable. A petition of appeal in this court sets down certain reasons challenging the conviction and judgment of the court below and praying that we rehear the matter and set aside the judgment and conviction (R.S. 2:15-3, 4, 5).
It is important to note that appellant had been a member of the immediately preceding grand jury; that the information about the existence and continuance of gambling had been imparted to him by persons, some in the employ of the City of Atlantic City, others employees of Atlantic County; that these persons wished to remain unknown lest they lose their positions; and that they, or some of them, had delivered to the appellant the "numbers game" slips or had them delivered to appellant's home or place of business, by messenger.
Turning to the reasons advanced by the appellant for refusing to answer the questions asked before the grand jury: The first, that he was committed to secrecy, may not be invoked. There is no such privilege available to the appellant. He may not for any such reason hamper the investigation of the grand jury. CompareIn re Grunow, 84 N.J.L. 235. His second reason for refusing to testify was that the grand jury declined to accept the condition he imposed: the exclusion of the prosecutor and his assistant. A witness may not lay down the conditions under which he will testify. He was asked to name his informants. He refused to do so unequivocally. He was further asked for whatever information he had about gambling and the like. He refused that except on the condition mentioned. He gave a further reason — that he might encounter the same experience as a Mr. Ogilvie, years before, who had been indicted for slander. But *Page 83 
he made no direct charge before the grand jury that the prosecutor or his assistant, then present, was involved in the witness' "strong belief" that there was corruption in the city and county law enforcement agencies. No legal reason was advanced to justify his recalcitrancy.
On the return of the rule to show cause the appellant conceded that in each instance he had declined to answer the questions. Counsel interposed a challenge to the sixth section of the state's petition on the ground that after the appellant had refused to give the grand jury the information it sought unless the prosecutor and his staff be excluded from the room, the foreman advised the witness that it was ready to receive any information or suggestion that the witness had to make concerning the matter under investigation. The point made was that "the so-called question [contained in the sixth paragraph] does not constitute a legal question framed in such manner as to require answer;" and, further, that the so-called question did not solicit legal evidence concerning matters then under consideration by the grand jury. This argument is too tenuous to require any discussion save passing comment. Even if we agree with the view of counsel and considered that the sixth paragraph should have been struck out by the judge at the hearing in the Oyer, nevertheless the proceeding for contempt stood unimpaired. The information sought had been made the subject of a question addressed to the witness several times and in varying forms. The witness was entirely aware of the purpose of the questions, viz., that the grand jury wished to subpoena the persons who had given first-hand information to the appellant. We perceive no merit in the objection.
At the end of the state's case on the return of the rule the appellant moved to dismiss the rule because the statute, supra, requires that there shall be disobedience or resistance to a writ, process or command of the court. The argument was that proper practice required that the witness be cited before the court, that the questions be submitted to the court, and that not until there had been a refusal to answer questions which the court ordered answered could the witness be said to have been in contempt. In certain of our cases it is true *Page 84 
the practice was followed of serving interrogatories on the alleged offender and have answer made thereto. See In reGonzales, 88 N.J.L. 536. What practice was followed in the case of In re Grunow, supra, does not appear; but the practice has not been uniform. Compare McQuade v. Emmons, 38 Id.397, where there was penalty imposed on the offender's admissions made under rule without either writ or interrogatories. These several methods are neither uniform nor jurisdictional except to the extent of laying before the court matters which constitute a contempt and affording to the party accused a fair opportunity of denying or confessing their truth. In re Cheeseman, 49 Id.115. The court overruled this and other objections which will be discussed presently on our consideration of the argument advanced in the appellant's brief.
The first argument in the brief is that "the charge here does not meet the statutory definition of contempt."
Our statute, in so far as subdivision (c) is concerned, is quite like the federal statute, which is of ancient origin and derived from the Federal Act of 1789 (also the act of 1831, now known as section 268 of the Judicial Code), section 385,U.S.C.A. Title 28. The federal statute has recently been construed by the Federal District Courts of New Jersey and Pennsylvania and by the Circuit Court of Appeals (Third Circuit) in certain similar cases before those tribunals. In the case ofIn re Meckley, 137 Fed. Rep. (2d) 310, it appears that the federal grand jury made written presentment to the District Judge that Meckley, appearing as a witness before the grand jury, had given obstructive, evasive and contumacious answers to the questions asked him, whereupon the District Judge entered a rule on the witness to show cause why he should not be adjudged in contempt. He was so adjudged after a hearing, which judgment was affirmed in the Circuit Court of Appeals, 137 Fed. Rep. (2d) 310. Certiorari was denied by the United States Supreme Court (64 S.Ct. 69). See, also, Camarota v. United States, 111Fed. Rep. (2d) 243, where a witness was held in contempt for refusing to answer certain questions before the grand jury. In that case it was pointed out that the grand jury is an arm *Page 85 
of the court, that proceedings by it are to be regarded as proceedings in the court, and that contempts in the presence of the grand jury are to be treated as taking place in the presence of the court; that they are to be summarily dealt with by the court without indictment; that where the contempt was not committed in the actual presence and hearing of the judge due process "requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. But this is not to say that the proceedings must take any particular form so long as the substantial rights of the accused are preserved." Certiorari
denied. (61 S.Ct. 16.) See, also, In re, c., Ellison,44 Fed. Supp. 375, a case which also is quite like the instant matter. Affirmed, 133 Fed. Rep. (2d) 903. Certiorari
denied. (63 S.Ct. 995.)
It is next said that the appellant cannot be adjudged "in contempt of the October term, 1943, grand jury as here charged. The argument is that the court as such was not affronted, that the conduct complained of took place before the grand jury. We perceive no merit in the argument. It is conceded in the appellant's brief that the grand jury "acts for the court;" that it is "an arm of the court under which it is organized," i.e., Oyer and Terminer. This being so, a witness who affronts the grand jury affronts the court so long as that which he does or refuses to do amounts in law to contempt. In this connection we consider the cases which we have examined and cited from the federal courts, construing their statute, so similar to our own (i.e., statute, supra, subdivision C) sound authority. The added fact that certiorari was denied by the United States Supreme Court in the cited federal cases impels us to conclude that they are controlling.
The next point made is that the appellant having been a member of the previous grand jury was "a member of a law enforcement body" and therefore was privileged, as such, from disclosing the names of his informants. The appellant did not stand on this reason before the grand jury and if he did it would have been unavailing. The function of a grand jury is to hear evidence on behalf of the prosecution and to determine *Page 86 
whether an indictment should be found. "The finding of an indictment is only in the nature of an inquiry or accusation, which is afterwards to be tried and determined; and the grand jury are only to inquire upon their oaths whether there be sufficient cause to call upon the party to answer it."Blackstone, Book 4, ch. 23, p. 2531 (Jones' Edition). And the grand jury is "an informing and accusing tribunal only without whose previous action no person charged" with crime could be put upon his trial. (Mr. Justice Field's charge to the United States Circuit Court, California District, 2 Sawy. 667.) The grand jury does not enforce the law. Its function is to make the accusation, i.e., present a bill of indictment; and no member of it can be said to be a law enforcement agent with which class of officers the cases cited by the appellant, to support his refusal to answer, are concerned.
It is further argued that the oath of secrecy taken by the appellant as a member of the May term grand jury prevents conviction on the present charge. The information in the possession of Mr. Schwartz was obtained while he was a member of the previous grand jury. It does not appear that the evidence or information obtained by Mr. Schwartz was made available fully to the grand jury of which he was a member and it is difficult to see upon what basis he rests any claim to immunity or privilege from testifying when called upon by the October term grand jury. It is true that the investigation and deliberations of the grand jury should be kept inviolate. The oath administered to the members of the grand jury so ordains. "The counsel of the state, your fellows, and your own you shall keep secret," but it is no violation of that oath to testify before a subsequent grand jury which also is bound by an oath of secrecy. Further, it should be observed that the information in the possession of the appellant was acquired by his own private investigations. It was not information that he had obtained within the precincts of the grand jury room but rather information imparted and exhibits obtained by the appellant at his home or place of business during the time when he was a grand jury member. Cases cited by the appellant — State v. Silverman, 100 N.J.L. 249; State v.Borg, 8 N.J. Mis. R. 349 — are not authority in support of the appellant's position. *Page 87 
It is next said that the appellant "was protected by a personal privilege" accorded to all witnesses. The argument is that after the witness' first appearance before the grand jury, on November 3d, he learned that an assistant Prosecutor of the Pleas of Atlantic County, Mr. Stringer, had said, "We will take care of Schwartz." The background of that episode is: One Charles E. Rupp, a member of the Jury Commission for Atlantic County, met the appellant and told him of a conversation had with Assistant Prosecutor Stringer. Stringer said to Rupp: "What is the matter with Joe Schwartz? He is causing all this trouble." Rupp replied: "Well, I don't know, Bill. I only put them on the jury panels. After they get on there I have no control over them" and added: "I read by the papers and I also know by different people's conversation that Mr. Schwartz has had frequent clashes with the prosecutor's office, but outside of that I don't know anything particular in the case." Stringer replied: "Well, he certainly seems to be sore at the prosecutor's office" and, "I guess we can take care of him." Rupp then proceeded to say at the hearing before the Oyer — "This conversation was in a light vein, there wasn't anything serious * * * and I didn't say anything about it to Mr. Schwartz for quite some time because I didn't think much about it * * *." Rupp further testified that some time later he met Schwartz at a luncheon "and I felt that I should warn Joe to be very careful of what he did and what he said because of the fact that I felt that there was a severe antagonism existing between Schwartz and the prosecutor's office." In one breath the witness said that his conversation with Stringer was of no particular moment and in the next that nonetheless he felt he should warn Schwartz to be careful. Whatever the fact may be, Schwartz, at the hearing before the Oyer, said that he had known Stringer for fifteen years or more; that he had no apprehension of violence from that quarter but that he felt that Stringer had power enough to make things uncomfortable for him, and the like. Mr. Stringer denied that Rupp's account of their conversation was accurate; denied that he said "we can take care of him" (Mr. S.); but rather that he said to Rupp: "I can always take care of myself." *Page 88 
We attribute no importance at all to this episode save that it emphasizes the fact that the appellant, for reasons satisfactory to himself, did not approve of the prosecutor and his staff. But however this may be, it conferred no privilege upon him to refuse to testify before the grand jury while the prosecutor was present.
The other points made by the appellant have had our careful consideration but are without merit.
The judgment under review will be affirmed. *Page 89