254 N.J. Super. 140 (1992)
603 A.2d 111
MARVIN GASTMAN, D.O. AND RINGWOOD MEDICAL GROUP, P.A., PLAINTIFFS-RESPONDENTS,
v.
NORTH JERSEY NEWSPAPERS COMPANY, NANCY RUBENSTEIN AND JANE DOE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 4, 1992.
Decided February 25, 1992.
*141 Before Judges LONG, BAIME and THOMAS.
Thomas J. Cafferty argued the cause for appellants (McGimpsey & Cafferty, attorneys; A.F. McGimpsey, Jr., on the brief).
Burton T. Cohen argued the cause for respondents (Okin, Cohen & Hollander, attorneys; Burton T. Cohen on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
We granted leave to appeal to review the Law Division's interlocutory order, directing North Jersey Newspapers Company and its editor, Nancy Rubenstein, to disclose the identity of an individual whose anonymous letter appeared in the letters to the editor column. The letter allegedly defamed plaintiff, Marvin Gastman, a practicing osteopath, by erroneously asserting that he had misrepresented his medical qualifications. Plaintiff *142 instituted a libel action against defendants and sought the name of the author of the letter. In granting plaintiff's motion, the Law Division held that the New Jersey Shield Law (N.J.S.A. 2A:84A-21) does not protect the confidentiality of information voluntarily furnished to the news media. The court also concluded that the privilege established by the Shield Law applied only to those actively engaged in the news gathering process and not to the newspaper itself or its editor.
We disagree and reverse. We hold that the privilege protects the confidentiality of the author of an unsolicited letter which is published by a newspaper. We also conclude that the protection accorded by the Shield Law is fully applicable to the newspaper itself and to an editor who is not directly involved in news gathering activities. Finally, we are of the view that a source's expectations of confidentiality are irrelevant in determining the applicability of the privilege.
The facts are not in dispute. On May 28, 1990, Suburban Trends published a letter to the editor. The author had originally submitted the letter without a signature. Subsequently, the letter-writer contacted Suburban Trends' editor, Nancy Rubenstein, to inquire as to whether it would be published. On being informed of Suburban Trends' policy to refuse to publish anonymous letters without a "name on file," the author submitted a second letter, identical to the first but signed.
The letter erroneously stated that doctors of osteopathy have less training than chiropractors. The letter also recounted that an osteopath who for many years had practiced in Ringwood was attempting to deceive the public by using the designation M.D. The letter suggested that the "impostor" should be removed from the area. The identity of the letter-writer was withheld.
Plaintiff, apparently the only osteopathic physician in Ringwood, retained an attorney who wrote Suburban Trends and demanded a retraction. Shortly thereafter, a second letter was published in which the author, an osteopathic medical student, *143 pointed out the misstatements contained in the initial letter with regard to the description of the training and qualifications of osteopaths. The newspaper, however, did not retract the prior letter and, instead, suggested that it publish an interview with plaintiff in a manner protective of his anonymity.
Plaintiff refused and instituted this action. Unable to learn the identity of the author of the letter, plaintiff moved to compel defendants to disclose this information. The Law Division granted plaintiff's application and this appeal followed. The order compelling disclosure was stayed pending disposition of the issues raised.
The newsperson's privilege appears in N.J.S.A. 2A:84A-21. The privilege is also codified in Evid.R. 27. The operative language of the privilege reads as follows:
Subject to Rule 37, a person engaged on, engaged in, connected with, or employed by news media for the purpose of gathering, procuring, transmitting, compiling, editing or disseminating news for the general public or on whose behalf news is so gathered, procured, transmitted, compiled, edited or disseminated has a privilege to refuse to disclose, in any legal or quasi-legal proceeding or before any investigative body, including, but not limited to, any court, grand jury, petit jury, administrative agency, the Legislature or legislative committee, or elsewhere.
a. The source, author, means, agency or person from or through whom any information was procured, obtained, supplied, furnished, gathered, transmitted, compiled, edited, disseminated, or delivered; and
b. Any news or information obtained in the course of pursuing his professional activities whether or not it is disseminated.
We need not recount the Shield Law's extensive legislative history or the events that led to its enactment. Suffice it to say, the newsperson's privilege was not recognized in the common law and is of relatively recent origin. See Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); In re Bridge, 120 N.J. Super. 460, 295 A.2d 3 (App.Div.), certif. denied, 62 N.J. 80 (1972), cert. denied, 410 U.S. 991, 93 S.Ct. 1500, 36 L.Ed.2d 189 (1973); Beecroft v. Point Pleasant Printing & Pub. Co., 82 N.J. Super. 269, 272, 197 A.2d 416 (Law Div. 1964); In re Grunow, 84 N.J.L. 235, 85 A. 1011 (Sup.Ct. 1913). Over the years, the Law has been repeatedly amended *144 "to establish the strongest possible protection for the [media]." In re Schuman, 114 N.J. 14, 24, 552 A.2d 602 (1989). In a series of decisions, our Supreme Court has held that the law protects information gathered or disseminated by news media "to the greatest extent permitted by the Constitution of the United States and that of the State of New Jersey." In re Farber, 78 N.J. 259, 270, 394 A.2d 330, cert. denied, 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978); see also Maressa v. New Jersey Monthly, 89 N.J. 176, 181, 445 A.2d 376, cert. denied, 459 U.S. 907, 103 S.Ct. 211, 74 L.Ed.2d 169 (1982); State v. Boiardo, 82 N.J. 446, 457, 414 A.2d 14 (1980); Note, The Triumph of the Press: New Jersey Departs from Federal Trends in Libel Law, 36 Rutgers L.Rev. 91, 105 (1983); Note, News Persons Have Absolute Privilege Under New Jersey Shield Law Not to Disclose Editorial Processes in Civil Libel Actions, 13 Seton Hall L.Rev. 599, 605-606 (1983).
Against this historical backdrop, we are convinced that the Law Division interpreted the Shield Law far too narrowly. By its very terms, the privilege protects the confidentiality of an "author ... from whom any information was ... supplied [or] furnished." N.J.S.A. 2A:84A-21(a); Evid.R. 27. The statutory language is devoid of any suggestion that, to be protected, the information obtained by the media must have been actively "solicited" by a newsperson. The Shield Law accords confidentiality to the "source" of news, whether or not the information was requested or voluntarily given.
We also find no basis for the Law Division's requirement that only persons actively engaged in the gathering of news may claim the privilege. In Maressa v. New Jersey Monthly, our Supreme Court held that, absent any conflicting constitutional right, newspersons have an absolute privilege not to disclose confidential sources in editorial processes. Id., 89 N.J. at 189, 445 A.2d 376. Consequently, the Shield Law was said to apply to decisions "about which leads to pursue and what information to publish, and the development of a newsperson's *145 belief in the veracity of what he or she pursues and publishes." Id. at 188, 445 A.2d 376. The Court observed that the privilege was "intended to apply to every aspect of the news process." Id. at 194-95, 445 A.2d 376. Implicit in its holding was the thesis that an editor engaged in transmitting or compiling information, such as unsolicited letters, may claim the privilege. In any event, this principle is plainly impelled by the broad statutory language.
Rubenstein was clearly "employed by news media." N.J.S.A. 2A:84A-21a. Among her duties, she was required to "transmit[], compile[], edit[], [and] disseminate news for the general public." Ibid. She obtained the letter in pursuit of her professional activities. The fact that she was not actively engaged in the gathering of the news, in an investigative sense, is wholly irrelevant. The Law Division thus erred by precluding her from invoking the privilege.
In addition, we hold that North Jersey Newspapers Company, the publisher of Suburban Trends, is similarly protected by the Shield Law. As a corporate entity, the company is a fictitious "person" engaged in the gathering and disseminating of news. The privilege would be easily circumvented were we to bar the corporate entity from invoking its benefit. Instead, we read the statute and the evidentiary rule consonant with the aims and goals sought to be achieved. Where the statutory and evidentiary requisites are satisfied, a corporation may claim the newspersons privilege.
Although not raised below, plaintiff contends the statutory privilege is inapplicable because the author of the letter had no reasonable expectation of anonymity. In advancing this argument, plaintiff emphasizes Suburban Trends' printed policy which stated that letters to the editor "must carry an actual signature." Plaintiff also relies upon Rubenstein's deposition testimony that the essence of her telephone conversation with the author was confined to verification. We note that the *146 record is silent respecting whether a promise of confidentiality was expressed by Rubenstein.
We hold that the privilege may be asserted whether or not the source of information requests or is promised anonymity. Thus, the holder of the privilege should not be precluded from utilizing the statutory protection because of a source's subjective expectations in disclosing the information. This conclusion comports with established case law that the privilege is that of the newsperson rather than the source. See State v. Boiardo, 83 N.J. 350, 361, 416 A.2d 793 (1980); Beecroft v. Point Pleasant Print. & Pub. Co., 82 N.J. Super. 269, 280, 197 A.2d 416 (Law.Div. 1964).
Our decision is also in accord with the overall purpose and legislative intent of the Shield Law. The overriding objective is to "bestow upon the press as broad a shield as possible to protect against forced revelation of confidential source materials...." In re Farber, 78 N.J. 259, 270, 394 A.2d 330 (1978). Because Suburban Trends published the letter anonymously, and has vigorously attempted to prevent disclosure, it obviously deems the letter-writer a confidential source deserving of Shield Law protection. We have no right to second-guess the newspaper's reasons or motivations.
Reversed.