52 So.2d 117 (1950)
CLEIN
v.
STATE.
Supreme Court of Florida, en Banc.
December 8, 1950.
Rehearing Denied April 7, 1951.
Louis M. Jepeway, Albert S. Dubbin, Phillip Schiff, and John G. Dauber, all of Miami, for appellant.
Richard W. Ervin, Atty. Gen., Reeves Bowen, Asst. Atty. Gen., Glenn C. Mincer and John Wynn, Miami, for appellee.
CHAPMAN, Justice.
The record in this cause reflects two articles published in Miami Life in Dade County, Florida. The first was on January 28, 1950, and is viz.:

"Miami Life

"Vol. XXIV. N. 5  Miami Fla., Saturday, Jan. 28, 1950

Reubin J. Clein, Editor.
"The Big news of the week was the appearance of Beach Councilman Melvin Richard and Commentator Columnist Barry Gray before the grand jury probing the attempted-bribery (of Richard) allegation.
"No concrete evidence was presented by either. In fact, Gray had to admit that he went off half-cocked in broadcasting the name of Jerry Greenwald as the bribe-offerer * * * the radio commentator said Buddy Allen, (his agent) and Harry Plissner came to him and relating the story of the bribe, mentioned the name Jerry.
"He merely inferred it meant Jerry Greenwald.
"Att'y Richard was asked whether his election had anything to do with keeping Miami Beach closed.
"He answered that to some extent this was the case, but added that the county was wide open.
*118 "Names County Spots Open
"Richard declared that the sheriff could close the county in ten minutes  if he wanted to. He named nearly every place running.
"`How can the sheriff close it in 10 minutes?' he was asked.
"`By raiding Sunny Isles  taking all the cash and records,' Richard replied. `That would set an example. All would close up promptly after the word got out.'
"Barry told the grand jury he thought Plissner was acting innocently as agent. He was told it constitutes a felony to act as agent in such a manner, but that didn't change Barry's mind on the matter.
"He, too, declared that while gambling had practically ceased at Miami Beach, the county was open. He, too, named spots like the Bahama Club, the Turf, Island Club, Sunny Isles, etc.
"`How do you find out these things?' he was asked.
"He said various people appearing on his program told him. They constantly informed him how much they'd lost here, lost there, going into detail about the operations.
"Att'y Richard was before the grand jury more than two hours.
"By the way, he asked exclusion of State Attorney Glenn Mincer. He cited a law that said the grand jury could do this. He declared Mincer wasn't interested `in prosecuting anybody.'
"On the whole, both recitals concerned only generalities and personal opinions."
Accompanying the article was a cartoon which is unnecessary to reproduce here.
The second article was on February 4, 1950, and is viz.:
"Grand Jury Quizzes Us
"As we go to press, Miami Life's publisher is scheduled to appear before the grand jury, which presumably wants to know the source of our information.
"Can we be expected to violate a confidence?
"While we wouldn't do anything that would obstruct justice, we can scarcely tell the grand jury anything we haven't already printed. Because all that we're free to disclose, We Print:
"We feel we'd be derelict in our duty to our readers if we refused to print News that we Hear.
"For instance, we've just found out the grand jury is going to hire  in fact, already has done so  an investigator to delve into the Dade gambling situation (just as we hinted might be done in last week's Miami Life).
"And we learned that Harry Plissner, feuding with Councilman Mel Richard of Miami Beach, whose campaign he managed, has been Indicted:
"We wouldn't be much of a newspaper if we didn't print That:"
On February 7, 1950, a subpoena issued and was served on Reubin J. Clein, and pursuant thereto, on the same date, the Appellant appeared before the Grand Jury of Dade County, Florida. He was duly sworn and by the Grand Jury and its authority interrogated as to the source or identity of persons from whom he had received information which had been published in Miami Life, a newspaper edited and published in Dade County, Florida, on dates of January 28th and February 4th, supra. As to the article published under date of January 28, 1950, the transcript (pages 10 and 11) reflects the following:
"Mr. Mincer: Did you write the article?
"Mr. Clein: Yes.
"Mr. Mincer: And you approved of it before it appeared in the newspaper?
"Mr. Clein: Yes, sir.
"Mr. Mincer: Will you tell the grand jury, please, where you got that information?
"Mr. Clein: Well, I have told  I have printed every thing that I am at liberty to disclose. If I was to reveal the source of my information I may as well go out of business. That has been a moot question for years and years  as to whether or a newspaper man  when he does not do any wrong, don't obstruct justice  has been generally granted that privilege. If I was obstructing justice or done something wrong or hurt something, or hurt some investigation that someone was carrying on, *119 it would be a different matter. Of if I had lied; if I hand't told the truth. Newspaper men have more or less taken it for granted through the years that they would be accorded that courtesy. It is more or less of an unwritten law."
As to the article published February 4, 1950, the record (Tr. pages 14 and 15) reflects the following:
"Mr. Mincer: Now, in the 4th day of February, 1950, issue of Miami Life appears a headline at the top which says Grand Jury Indicts Plissner  Hires Gambling Investigator! Did any one directly or indirectly connected with the State Attorney's office give you the information that appears in that headline?
"Mr. Clein: No.
"Mr. Mincer: You mean that the headline was being published before it was circulated?
"Mr. Clein: I don't understand the question.
"Mr. Mincer: Well, did you write the headline?
"Mr. Clein: Yes.
"Mr. Mincer: Did any person that is a member of the grand jury give you the information upon which you wrote that particular headline?
"Mr. Clein: No member in this room.
"Mr. Mincer: That also includes Henry Colman, the court reporter?
"Mr. Clein: That's right  nobody in this room.
"Mr. Mincer: Will you please name the person or persons who gave you the information upon which you based that headline?
"Mr. Clein: No. That is for the same reasons stated previously.
"Mr. Mincer: Do you know the person who gave you the information upon which you based that headline?
"Mr. Clein: I will have to refuse to answer, Glenn. I'm sorry.
"Mr. Mincer: I believe that in this same issue is a news story relating to the Plissner indictment. Is that true or not?
"Mr. Clein: A news story?
"Mr. Mincer: I am asking you. I don't know.
"Mr. Clein: This (pointing) is all.
"Mr. Mincer: Oh, yes. On the first double column on the front page of this issue of the 4th of February, 1950, appears this paragraph: `And we learned that Harry Plissner, feuding with Councilman Mel Richard of Miami Beach, whose campaign he managed, has been Indicted!' Did you write that paragraph?
"Mr. Clein: Yes."
The Grand Jury of Dade County, on February 7, 1950, adopted a motion requesting the State Attorney to institute such an action against Reubin Clein as the law and facts warranted for his refusal to divulge to the Grand Jury the source of his information which was the basis of the above news stories appearing in Miami Life as published by Reubin Clein. A rule nisi on February 7, 1950, issued out of the Circuit Court of Dade County, Florida, directed to Reubin Clein based on the adopted motion of the Grand Jury, an affidavit of the State Attorney and a stenographic transcript of the proceedings of the Grand Jury when Reubin Clein appeared before it. The respondent-appellant filed a motion to discharge the rule on various grounds  which was denied, an answer was filed and a hearing was had in the Court below on the issues made by the pleadings. The Court below, as a result of the hearing, adjudged the respondent Clein guilty of contempt and ordered his confinement in the Jail of Dade County for a period of thirty days. Clein appealed.
Presented on the record here are two questions for adjudication: First, was the conduct of the respondent-appellant when before the Dade County Grand Jury, as shown by the record, contemptuous within the meaning of the applicable law? Second, if so, is Chapter 25554, Acts of 1949, Laws of Florida, valid and constitutional? In the case of Ex parte Crews, 127 Fla. 381, 173 So. 275, we held that any act which is calculated to embarrass, hinder, or obstruct courts in the administration of justice, or which is calculated to lessen its authority or dignity, is a contempt  the test *120 not being physical propinquity of acts of court but its tendency to directly affect the administration of justice. The rule, supra, is in line with the following authorities: Ruling Case Law, Vol. 6, page 498, holds that it is a contempt to refuse to testify in a supplementary proceeding such as in taking depositions or the refusal to testify before a grand jury. See 12 Am.Jur. 399, par. 15; 17 C.J.S., Contempt, § 23, page 31; Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979.
Members of the journalistic profession do not enjoy the privilege of confidential communication, as between themselves and their informants, and are under the same duty to testify, when properly called upon, as any other person. As stated in Re Wayne, 4 Haw.Dist. Ct.R. 475, where it appeared that a finding of a grand jury was made public in advance of its being regularly reported to the court, in overruling the contention of the city editor of a newspaper that he was privileged to refuse to disclose the source of his information as to such finding, "The position of the witness is untenable. Though there is a canon of journalistic ethics forbidding the disclosure of a newspaper's source of information,  a canon worthy of respect and undoubtedly well founded, it is subject to a qualification  it must yield when in conflict with the interests of justice,  the private interest involved must yield to the interests of the public." See People ex rel. Mooney v. Sheriff of New York County, 269 N.Y. 291, 199 N.E. 415, and 102 A.L.R. 769; also the other cases cited in the annotation in 102 A.L.R. at page 771.
It is the policy of the law to shield the proceedings of grand juries from public scrutiny. The oath of a grand juror binds him to secrecy. Section 905.10, F.S.A. The proceedings of a grand jury are to be kept secret. Section 905.24, F.S.A. Section 905.16, F.S.A., provides that the grand jury shall inquire into every offense triable within the county for which any person has been held to answer, if any indictment has not been found or an information filed for such offense, and all other indictable offenses triable within the county which are presented to them by the prosecuting attorney or otherwise come to their knowledge.
The duties of grand juries are prescribed both by our statutes and the common law. Our holding in Re Report of Grand Jury, 152 Fla. 154, 11 So.2d 316, sustained a recommendation of a grand jury to the Governor of Florida to the effect that a Constable be removed from office. Speaking through Mr. Justice Terrell this Court in part said, text 152 Fla. 158, 11 So.2d 316, 318:
"* * * The charge `concerning their duties' must of course be encompassed within the oath and the statutes but it is well known that by their charge trial courts have directed the grand jury to investigate every offense that affected the morals, health, sanitation, and general welfare of the county. The charge also goes to the investigation of county institutions, buildings, offices, and officers and directs them to make due presentment concerning their physical, sanitary, and general condition. The grand jury is in other words the guardian of all that is comprehended in the police power of the State. To `inquire of all such matters and things as shall be given you in charge' and `present every offense against the penal laws of the State whether any specific punishment is pointed out or not' warrants this.
"This interpretation clothes the grand jury with broad inquisitorial power but no broader than judges have construed them to have since the law was promulgated. It would be a strange anomaly to hold that their power to indict or to recommend did not comport with their power to investigate. There are some things however that are not within the category of grand jury powers. They will not be permitted to single out persons in civil or official position to impugn their motives, or by word, imputation, or innuendo hold them to scorn or criticism. Their investigation must be directed to detecting unlawful offenses; they will not be permitted to become the tool of blocs and groups to pry into personal affairs or to oppress some one. * * *"
We find sufficient testimony in the record to sustain the conclusion of fact as expressed by the trial court and made a *121 part of the opinion and judgment viz.: "I find that among those facts are that the respondent, Reubin Clein, when he appeared as a witness before the grand jury, which was in session in this county on February 7, 1950, was asked certain questions relating in substance or generally to the source or identity of persons from whom he had received certain information which had been published in a newspaper of which he was the editor and publisher, and which purported to reveal not only the testimony given by witnesses who had previously appeared before the grand jury, but certain matters which the grand jury purportedly had deliberated and voted, including a statement that one person not then in custody had been indicted by the grand jury, and that the respondent Clein refused to answer those questions."
The grand jury of Dade County, Florida, on February 7, 1950, when the appellant was before it and interrogated was organized under the provisions of Chapter 25554, Laws of Florida, Acts of 1949. It is contended that this Act is void and unconstitutional in that it is arbitrary and unreasonable and was enacted as a Special Act rather than a general law. The Act is viz.:

"Chapter 25554  (No. 558)

"Senate Bill No. 975
"An Act to Fix and Provide the Number of Grand Jurors to Constitute a Grand Jury, to Constitute a Quorum of the Grand Jury, and to Find and Return an Indictment or Presentment, in Counties Having a Population of 315,000 or More According to the Last State or Federal Census. Be It Enacted by the Legislature of the State of Florida:
"Section 1. In all counties having a population of 315,000 or more according to the last State or Federal Census, the grand jury shall consist of twenty-three jurors; provided that after a grand jury of twenty-three is empanelled and convened, fifteen members of such grand jury shall constitute a quorum and may transact business and an indictment or presentment shall be found and returned only upon the concurrence of twelve or more grand jurors. * * *"
Section 10 of the Declaration of Rights of the Florida Constitution, F.S.A., in part, provides: "The Legislature shall have power by general legislation to regulate the number of grand jurors to serve upon, or constitute, a grand jury and to fix the number of grand jurors required to vote for and return an indictment or presentment." Counsel for appellant contend that Chapter 25554, supra, is not general legislation but special legislation prohibited by Section 20 of Article 3, also that Section 21 of Article 3 was not observed or complied with in its enactment. Appellant relies upon the following authorities: State ex rel. Baldwin v. Coleman, 148 Fla. 155, 3 So.2d 802; Crandon v. Hazlett, 157 Fla. 574, 26 So.2d 638; State ex rel. Baker v. Gray, 133 Fla. 23, 182 So. 620; Sparkman v. County Budget Commission, 103 Fla. 242, 137 So. 809; State ex rel. Burford v. Daniel, 87 Fla. 270, 99 So. 804; State ex rel. Railroad Commissioners v. Atlantic Coast Line R.R. Co., 60 Fla. 465, 54 So. 394.
Counsel for appellee contend that Chapter 25554, although based on a population classification, is a general Act and potentially applicable to many other Florida counties. The following cases are cited: City of Coral Gables v. Crandon, 157 Fla. 71, 25 So.2d 1; Davis v. State ex rel. Cromwell, 156 Fla. 181, 23 So.2d 85; State ex rel. Ellars v. Board of County Com'rs of Orange County, 147 Fla. 278, 3 So.2d 360; Hysler v. State, 132 Fla. 209, 181 So. 354; State ex rel. Landis v. Harris, 120 Fla. 555, 163 So. 237; State ex rel. Baker v. Gray, 133 Fla. 23, 182 So. 620; Beasley v. Cahoon, 109 Fla. 106, 147 So. 288; Sparkman v. County Budget Commission, 103 Fla. 242, 137 So. 809; State ex rel. Buford v. Daniel, 87 Fla. 270, 99 So. 804.
Other counties of Florida are potentially within the population brackets enunciated in Chapter 25554 and it therefore becomes general and uniform in its operation throughout the several counties of Florida. We fail to find error in the record.
Affirmed.
ADAMS, C.J., and TERRELL, THOMAS, SEBRING, HOBSON and ROBERTS, JJ., concur.