## BISCAYNE KENNEL CLUB, Inc., et al v.
## FLORIDA STATE RACING COMMISSION, et al.
### No. 18921.
Circuit Court, Leon County.
August 30, 1963.

Mershon, Sawyer, Johnston, Simmons & Dunwody, Miami, Walton, Schroeder, Atkins, Carson & Wahl, Miami, Hoffman, Kemper & Johnson, Miami, Harold Kassewiz, Miami, C. H. Landefeld, Jr., Hollywood, and Bruce Davis, Tallahassee, for plaintiffs.

Richard W. Ervin, Attorney General, Leonard R. Mellon, Assistant Attorney General, and Willard Ayres, Ocala, for defendant Florida State Racing Commission.

Sullivan, Musselman & Cochran, Pompano Beach, and Sibley, Grusmark, Giblin, King & Levenson, Miami Beach, for defendants South Florida Harness Raceways, Inc. and Tourist Attractions, Inc.

HUGH M. TAYLOR, Circuit Judge.

For the purpose of this decree it will be assumed that the reader is familiar with the pleadings and the contents of the statute cited.

The plaintiffs seek a decree (1) determining that chapter 63-130, Laws of Florida, is "illegal, invalid and unconstitutional," and (2) enjoining the defendant, Florida State Racing Commission, from granting any permit authorizing the operation in Broward County of a harness racing track under authority of the dog racing permit now owned by Tourist Attractions, Inc. but formerly owned by Key West Kennel Club.

The complaint as amended alleges many reasons why the plaintiffs contend that the court should declare this statute invalid. These will be discussed in the order appearing in plaintiffs' brief.

The first contention made is that section 16, article III of the constitution of Florida has been disregarded to the extent that there are eighteen provisions of the body of the act not within the scope of the title and that in ten particulars the title is "misleading".

This court in approaching a consideration of these questions must be guided by the rules which the Supreme Court has declared applicable to such problems. Every act of the legislature is presumed to be constitutional and valid.[1] The court should declare a statute invalid because in violation of the constitution only when its invalidity has been established beyond a reasonable doubt.[2] Section 16, article III of the constitution does not require that the title to an act be an index to its contents.[3] The constitution provides that a statute must relate only to one subject "and matter properly connected therewith", but only the "subject" must be expressed in the title. It is not necessary to spell out in the title the "matter properly connected" with the subject expressed in the title.[4] Limited only by the requirement that a single statute may relate only to one subject and matter properly connected therewith, the legislature may make the title to an act as broad or as restrictive as it may choose, but the legislature binds itself by restrictions which it places in the title which it selects for an act.[5]

If any provision of a law is not within or properly connected with the subject expressed in the title such provision is not effective. But this does not affect the remainder of the act unless it is so essential a part of the apparent legislative intent that the court can say with assurance that the legislature would not have enacted the valid parts of the statute without the invalid portions.[6] This is particularly true when the act contains a saving clause such as is found in section 3 of chapter 63-130.

In light of these rules we turn to a study of the title and contents of chapter 63-130.

The first clause of the title is "An Act relating to the operation of harness tracks * * * ". If the title had stopped here it would have been broad enough to cover any "matter properly connected" with the operation of harness tracks. But the title contains much additional matter which could hardly expand but *may restrict* the scope of legislation permitted under the title as a whole. When we examine the various provisions of the act which plaintiffs assert are invalid under section 16, article III of the constitution we must answer, as to each of them, these questions —

[1]City of Winter Haven, et al. v. A. M. Klemm & Son, 181 So. 153.
[2]Town of Monticello v. Finlayson, 23 So. 2d 843.
[3]McCord v. Smith, 43 So. 2d 704.
[4]City of Ocoee v. Bowness, 65 So. 2d 7.
[5]South Florida Trust Co. v. Miami Coliseum Corp., 133 So. 334.
[6]State v. Newell, 85 So. 2d 124.

1.  Is this matter which is "properly connected with" the operation of harness tracks?

2.  If the answer is "yes" then — Is there anything in the title which, beyond a reasonable doubt, excludes this matter from the broad general subject of "matter properly connected" with the operation of harness tracks?

3.  If, as to any provision, the first question is answered in the negative or the second question is answered in the affirmative, a third question is presented — Is this provision essential to the granting of the permit sought or is it so essential a part of the act that its elimination would render the entire act invalid?

The court might well dispose of the contention that each of eighteen items in the body of the act are not within the title by answering only the first question because the very exhaustive brief of plaintiffs begins its discussion of each of them with the assertion that the title "omits * * * reference" or "makes no reference" to such matter. A most casual examination discloses that each of such provisions is "properly connected" with the "operation of harness tracks". Every provision of the act comes within the scope of the first clause of the title.

However, the court has carefully considered the second question as applied to each provision of the act, the validity of which is questioned under this argument and, with one exception, finds no basis for any serious contention that the matter is excluded from the body of the act by any part of the title.

The title contains this language — "providing that harness racing shall be governed by chapter 550, Florida Statutes, except as otherwise provided, specifically as to referendum election; * * ". This language strongly suggests, if the correct construction does not literally mean, that chapter 550 shall govern the operation of harness racing "specifically as to referendum election". If this be the correct and binding construction, then so much of the act as authorizes the moving of a racing permit into a county without a referendum election in that county as is provided in chapter 550 is not only inconsistent with, it is in actual conflict with, the title.

On the other hand, the quoted part of the title is at least *susceptible* to the construction that the words "specifically as to referendum election" are intended to modify "except as otherwise provided" instead of "shall be governed."

When the language of the title to an act is susceptible to two constructions, one of which renders a vital part of the statute invalid and the other does not, it is the duty of the court to give the title that construction which sustains the validity of the enact-

ment, because the court cannot say beyond a reasonable doubt that the legislature has failed to meet the requirements of the constitution in enacting the statute. This is particularly true in the case under consideration in which the first clause of the title "An Act relating to the operation of harness tracks * * * " is clearly broad enough to cover everything found in the body of the act, and the only debatable question is whether or not the remainder of the title is such a restriction upon the quoted clause as to remove from the scope of the act matter which would otherwise be clearly within the subject expressed in the title.

A careful examination of each of the ten particulars in which plaintiffs contend the title is "misleading" does not reveal any such imposition upon the public by the legislature in framing the title and the body of the act as to justify the court in saying that, beyond a reasonable doubt, the effect of the title is to mislead the public as to the contents of the act.

It is worthy of note that, although this case has received the usual amount of publicity incident to such litigation, no party other than competing track operations has voiced any suggestion that they were misled. It is hardly to be assumed that any owner of a racing track of any sort would read the title without being impressed with the necessity of examining the full text of the bill.

Plaintiffs further contend that chapter 63-130 is invalid because it denies them the equal protection of the law in violation of section 1 of the Bill of Rights in the constitution of Florida, and the fourteenth amendment to the constitution of the United States, and also because it is a special or local law enacted as a general act and is invalid by reason of sections 20 and 21, article III, of the constitution of Florida.

Although these constitutional provisions are quite different in their scope of operation, their effect upon the validity of the statute under consideration is dependent upon the answer to the same question — Are the classifications made by the statute, which control its application, reasonable?

When we consider a classification made in the regulation of race tracks having legalized pari-mutuel gambling it is necessary to recognize each of these rules which have been clearly enunciated by the Supreme Court —

> "Whether the policy of this law is good or bad is not for us to say. The matter of the wisdom or good policy of a legislative act is a matter for the legislature to determine. The courts are required to give effect to the legislative act if it does not violate the constitution." Lee v. Bank of Georgia, 159 Fla. 481, 32 So.2d 7, 13 L.R.A. 2d 1306.

"[C]lassifications for governmental purposes that have a reasonable basis in the subject regulated will be approved even though the operation of the act is confined to a single county, if they are potentially applicable to other counties." Greene v. Gray, 87 So.2d 504.

"Authorized gambling is a matter over which the state may exercise greater control and exercise its police power in a more arbitrary manner because of the noxious qualities of the enterprise as distinguished from those enterprises not affected with a public interest and those enterprises over which the exercise of the police power is not so essential for the public welfare." Hialeah Race Court v. Gulfstream Park Racing Ass'n. Inc., 37 So.2d 692.

But it must also be remembered —

"[T]hat race track gambling establishments are now legal and that those in a like situation should be treated fairly and impartially." Volusia County Kennel Club v. Haggard, 73 So.2d 884.

With these principles in mind, we must examine the body of chapter 63-130 to determine the validity of the classifications made by this statute. Quite obviously three types of classifications are found — (1) The classification of those race tracks which can take advantage of the statute and, in effect, transfer their permits from one county to another for the limited purpose of operating harness tracks, (2) the classification of the counties to which such transfers may be made, and (3) classifications of the transferred permits as to hours of racing, leasing running track facilities and split-season operations.

The only requirements for the transfer of a permit under the statute is that the applicant possess a permit and license to operate dog racing, horse racing or harness racing in the state of Florida during the winter horse racing season and that during the two preceding racing seasons it shall have operated a minimum of fifty days with an average pari-mutual play of less than $20,000 per day.

Under existing law[7] tracks having minimum mutuel play enjoy tax advantages deemed essential to their continued operation. This materially affects the state's revenues. On the other hand, there is substantial public opposition to increasing the number of tracks permitted to operate in the state. It would appear that the legislature took these factors into account in enacting the statute under consideration. The court cannot say, as a matter of law, that chapter 63-130 is an arbitrary and unreasonable means of

[7]Sections 550.161, 550.163, Florida Statutes.

increasing state revenues without increasing the number of establishments at which legalized gambling will be permitted.

The limitation of the benefits of the act to those tracks having a winter racing season does appear somewhat peculiar. But every dog track[8] in the state, present or potential, may elect to have a winter racing season except those located in the limited area described in section 550.083, Florida Statutes. If this limitation be invalid the invalidity lies in subsection (2) of section 550.083 rather than in chapter 63-130.

As of this date the defendant Tourist Attractions, Inc. is the only holder of a permit meeting the requirements of the statute so as to entitle it to move its operations. But that fact alone does not render the classification unreasonable. The whole object of the statute in this regard is to permit the removal from one location to another of a track that is operating under financial difficulties so acute as to render its future successful operation and tax-paying ability uncertain. Whether this be wise or unwise is not a matter for judicial inquiry. The question is whether or not it is unconstitutional. There appears to be nothing in this classification that is inherently offensive to the organic law. But the plaintiffs quote facts and figures which, they say, establishes the great improbability of other race tracks ever falling into this classification.

The validity of legislative classification is not dependent upon the probability of others entering or leaving a class. The criteria are — is the class open to others who may enter it? and, is there a rational distinction between those in the class and those outside it, when the purpose of the legislation and the subject of the regulation are considered?

This can best be illustrated by comparison of two cases decided by the Supreme Court almost simultaneously. The legislature of 1949 enacted two statutes general in form, of the type commonly called "population" acts. In each statute the line of demarcation was a population of 315,000. Each statute applied immediately only to Dade County. At the time of the enactment of the statutes the next largest county was Duval with a population of 273,843 according to the last preceding census. The court examined the subject matter of the two acts and determined that one was in effect a local law because there was not that reason-

---

[8]There is no need to consider the validity of the act as applied to any track other than a dog racing track, because only a dog racing track is here involved. Differences in regulations, including difference in tax rates, applying to different types of racing have long been recognized, and if the act should be held invalid as to horse running tracks that holding would not affect its validity as to dog tracks.

able basis for the classification essential to its enactment as a general statute.[9] The other statute, enacted at the same session of the legislature, having the same population breaking point was declared valid as a general law based upon a reasonable classification.[10] It is interesting to observe that it was not until the census of 1960 that Duval, or any other county, attained the population necessary to bring it within the scope of the valid act.

It is potentiality, not immediate probability, of others coming within each class, plus a reasonable basis for distinguishing between those falling in different classes that renders a classification constitutionally permissible.

The same principles must be applied in measuring the constitutional validity of the classification of counties into which the track may remove its operations. No track may be moved into a county which does not meet these requirements — (1) the people of the county must have voted twice in favor of permits for pari-mutuel betting at race tracks, (2) there must not be in the county a horse track in which the average daily pool for each of the two preceding years has been less than $400,000 during a racing season of at least fifty days, and (3) no permit shall be moved to a county in which there are two or more horse track permits. Each of these requirements has a direct bearing upon the probable financial success of the track moving its operations and changing from dog racing to harness racing. They also have a direct relation to the effect upon state revenues resulting from competition with existing tracks. Limitations in numbers and restrictions upon locations of tracks have long been a part of state regulation of racing, and their validity, as such, is not questioned.

But plaintiffs insist that these restrictions, spelled out in this statute, are such that they serve to make the statute special and local because *when viewed in the light of present conditions* they make the future transfer of any other track practically impossible. They point out that the number of counties which have *presently* voted twice in favor of pari-mutuel betting on races is limited, and that most of these counties are eliminated as future locations for tracks moving their locations under chapter 63-130 because of the other limitations of the act. But present conditions are not the criterion. It is the prospective application to future conditions that renders a classification constitutional if otherwise reasonable.

Every "population" act enacted in 1961 applies to the status of the various counties as then existing and the status of each county

---

[9]Lindsey v. City of Miami, 52 So. 2d 111.

[10]Clein v. State, 52 So. 2d 117.

is frozen until the next census which cannot reasonably be expected before the end of 1970. This ten year lapse between the enactment of a statute and the possibility of other counties entering into a particular class regulated by the statute does not render the statute unconstitutional — otherwise no population act would be valid.

This court cannot first predict that within the next ten years there will not be such changes in the status of other race tracks now existing or hereafter authorized as to bring them within the requirements of chapter 63-130, and also predict that there will not be such changes in the status of counties as to make available other counties into which tracks may lawfully be moved; and then, based upon that prediction, declare that chapter 63-130 is unconstitutional. And, of course, there is no constitutional requirement that there must be a change in a class within ten years from the enactment of the statute. That figure is used here because it is the minimum time within which a change in classification of counties may be anticipated under many valid population acts enacted shortly after each census.

Plaintiffs argue that it is the obvious intent of the statute to favor one race track and to accord it benefits which no others will enjoy. This, they say, makes the statute special and local. Every population act is obviously intended to favor the counties — often a single county — falling within the population bracket fixed in the statute. If legislative consciousness of immediate benefit to a single member of a class necessarily renders a statute special, then all population acts affecting a single county must be held invalid as special laws. But this is not the case.

It is probably a matter of which the court may take judicial notice that the necessity for a large percentage of the laws passed at each session of the legislature is suggested by particular factual situations. When a problem is presented to the legislature by a citizen who has been adversely affected by existing law, the legislature frequently examines the situation and formulates a general law which, although presently beneficial to only that citizen immediately affected, is determined by the legislature to be potentially beneficial to others and in the public interest. The need for such laws would probably not have occurred to the legislature but for the individual to be immediately affected and, in one sense, the laws could be said to have been enacted for the benefit of such individuals. But that does not render the statutes invalid.

The third area in which plaintiffs urge that the classification made by chapter 63-130 is unconstitutional relates to details of the operation of tracks moved by authority of this statute which

include the following — Such tracks may conduct harness races at night only, and between the hours from 7 P. M. until 12 midnight. Such a track may lease facilities from a horse race permittee having a track within 40 miles of its new location and may conduct its harness races at such track "pending the construction of its permanent facilities". After its permanent facilities are completed such a track may conduct a split season — operating some days at its permanent location and some days in the leased facilities of the nearby horse racing track.

It is not necessary — in fact it would be improper — to discuss the validity of these provisions of the statute at this time. Each of them could be held to be invalid without affecting the validity of the remainder of the statute, or the right of the plaintiffs to the relief sought *in this action*. The complaint prays that chapter 63-130 be declared invalid and that an injunction issue restraining the transferring of operations under the racing permit held by the defendant Tourist Attractions, Inc. None of the last group of questions go to the validity of the statute as a whole, or the right of the track to seek, or the racing commission to grant, a transfer of its base of operations to another county.

For the reasons stated, it is, considered, ordered, adjudged and decreed that the motions of the defendants Tourist Attractions, Inc., Florida State Racing Commission, etc., Frederick Van Lennep, individually, and South Florida Harness Raceways, Inc., a Florida corporation, to dismiss the complaint filed herein as amended be and the same are hereby granted and said complaint as amended be and it is hereby dismissed with leave to amend within ten days if the plaintiffs be so advised.