537 So.2d 150 (1989)
Robert TARRANT, Appellant,
v.
STATE of Florida, Appellee.
No. 88-1134.
District Court of Appeal of Florida, Second District.
January 6, 1989.
*151 E.C. Watkins, Jr., Plant City, Nicholas M. Matassini, Tampa, for appellant.
Robert Tarrant, Pro Se.
Robert A. Butterworth, Atty. Gen., Tallahassee, and David R. Gemmer, Asst. Atty. Gen., Tampa, for appellee.
PARKER, Judge.
Tarrant appeals a judgment and sentence in which he was adjudicated guilty of two counts of direct criminal contempt resulting in sentences of fines, or, in the event the fines were not paid, a jail sentence. We reverse the judgment and sentence as to one count and affirm as to the other count.
Tarrant was the defense attorney for three defendants in a drug trafficking trial. Following final argument and the jury charge, the trial court, pursuant to Florida Rule of Criminal Procedure 3.850, inquired of Tarrant why he should not be held in direct criminal contempt. The first ground asserted by the trial court was Tarrant's final argument to the jury concerning a certain exhibit which had been admitted into evidence. The second ground asserted by the trial court was Tarrant's personal attack upon the assistant state attorney during final argument.
As to the first ground, the exhibit was a jail visitation log which indicated that the assistant state attorney prosecuting the case, Susan Sexton, had signed in at the jail on October 25, 1986, was there for three hours, and that the purpose of the visit was to interview Sisto Monserrat, an inmate. Monserrat, who testified for the state on October 27, 1986, stated that he had spoken to Sexton only once two weeks earlier. Sexton asserted at a side bar conference with the judge and Tarrant that in spite of the jail log, she had not spoken with Monserrat on the date indicated by the log and, instead, had been at the jail to speak to another witness. Over the state's objection, the trial court admitted the jail log as a business record for the purpose of proving the substance of what the log purported to show on its face; that is, the assistant state attorney visited Monserrat on that day. The trial judge stated Sexton *152 could testify, if she wished, to rebut the document. Sexton, however, did not testify, and she failed to call any witness to rebut the jail log. Tarrant utilized the jail log during closing argument to attempt to convince the jury that Sexton visited Monserrat shortly before Monserrat testified, thereby discrediting Monserrat's statement as to when he talked with Sexton.
Contempt is "any act which is calculated to embarrass, hinder, or obstruct courts in the administration of justice, or which is calculated to lessen its authority or dignity... ." Clein v. State, 52 So.2d 117, 119 (Fla. 1950). The first ground for contempt cannot stand because it was a fair comment upon the evidence. The rule in Florida is that "considerable latitude is allowed in arguments on the merits of the case. Logical inferences from the evidence are permissible." Thomas v. State, 326 So.2d 413, 415 (Fla. 1975) (emphasis deleted). Based upon the facts that the exhibit was admitted into evidence and Monserrat's testimony, Terrant's remarks during closing argument were addressed to the evidence and were not contemptuous.
The second ground for contempt concerned Tarrant's remarks in closing argument directed toward Sexton. Tarrant referred to the jail log and noted that Sexton signed in for a three hour visit with Monserrat during the trial. Thereafter, Tarrant accused Sexton of lying and cheating in concert with Monserrat in that Sexton knew Monserrat was lying and failed to disclose it. Tarrant further stated the judge was stopping the prosecutor from cheating when he sustained 400 defense objections. Tarrant continued by asking the jury if they would play miniature golf with the prosecutor. Tarrant commented that the jury would need an impartial observer to watch Sexton constantly to stop her from cheating by kicking the ball. Tarrant characterized the prosecutor's trial tactics as "[l]et's see if we can cheat some more today... . Cheat, cheat, cheat." Tarrant asked the jury if they would buy a used car from the prosecutor, telling the jury they would need the Department of Transportation to inspect the car. Tarrant's concluding remarks against Sexton were as follows:
Do you recall when we started out, I referred to her as a lady throughout all the talk, and she then became a woman, and later on she became a female.
Well, I believe in calling a spade a spade, and I believe in giving somebody the benefit of the doubt until I find out they are cheaters; and when I find out they are cheaters, I realize they can't be ladies either.
I have never met a lady that was a cheater, but I have met a lot of women that were cheaters, and I think you all have gotten to see one right there. You have gotten to see one try and try again to cheat right before your eyes.
But she needs to cheat in this case because there is no evidence other than some other cheaters. There is just a gang of cheaters that she has become associated with.
It is improper and unethical for counsel to attack the personal integrity and credibility of opposing counsel instead of trying the factual and legal issues. Briggs v. State, 455 So.2d 519 (Fla. 1st DCA 1984). We think it is elementary that conduct of an attorney which is improper and unethical lessens the dignity of the court under the standard set forth in Clein and, as such, is grounds for contempt. Other jurisdictions have recognized that abusive or insulting language directed toward opposing counsel at trial constitutes contemptuous conduct. Eizerman v. Behn, 9 Ill. App.2d 263, 274, 132 N.E.2d 788, 799 (1956); State ex rel. Cary v. District Court of Hennepin County, 110 Minn. 446, 447, 125 N.W. 1020, 1020 (1910).
A trial judge should exercise his power to adjudge one in contempt with care and circumspection. State v. Clemmons, 150 So.2d 231 (Fla. 1963). Generally, a trial judge is required to caution or warn an attorney that the attorney's actions can result in contempt. Carroll v. State, 327 So.2d 881 (Fla. 3d DCA 1976). However, when the conduct is contemptuous on its face, a warning is not required. In re Buckley, 10 Cal.3d 237, 110 Cal. Rptr. 121, 129, 514 P.2d 1201, 1209 (1973), cert. denied, 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156 (1974); State v. Johnson, 171 Wash. 388, 389, 18 P.2d 35, 37 (1933). We *153 find that Tarrant's conduct was facially contemptuous. There are nine pages of trial transcript containing repeated personal attacks against opposing counsel. Such practice before a court cannot be condoned.
It can be argued that the trial judge should have warned Tarrant. It can also be argued that opposing counsel should have objected to this character denigration. Both arguments have merit. The contemptuous conduct, however, occurred when the words were uttered, and one could not unring the bell. We realize that in the heat of high emotions during a trial, an improper statement by an attorney may occur. When this happens, it should be addressed immediately by the trial court, with or without an objection from opposing counsel. Ailer v. State, 114 So.2d 348 (Fla. 2d DCA 1959). Tarrant's continued improper and unethical behavior was not an isolated incident of improper behavior, and such outrageous conduct before a trial court deserves a finding of contempt.
Accordingly, we reverse the trial court's judgment and sentence of contempt as to the first ground and affirm the judgment and sentence as to the second ground.
AFFIRMED IN PART; REVERSED IN PART.
DANAHY, A.C.J., and SCHNOONOVER, J., concur.