PLEDGER *vs.* THE STATE OF GEORGIA.

1. To publish in a newspaper a statement that a real estate and renting agent has objected to a negro tenant on account of his race, and caused him to lose a certain location where he was doing business, and as a consequence causing him to sell out at a loss, and warning colored people to rent from other agents and "leave this old skunk to stink himself to death," imports malice and an intention to injure the business of the person of whom the publication was made, and was such a publication as would furnish a basis for an indictment for libel.

2. There was no proof of the truth of the statements made in this publication, and a charge in respect to justification by giving the truth in evidence should not have been given. The giving of a charge, as to the extent to which the truth of the charge would justify the publication of the libel, was not error of which the defendant could complain; and whether it correctly announced the rule of law or not, it did not, under the proof, injuriously affect any right of the defendant.

3. Voluntary statements, made under oath by the defendant, pending a motion to continue the case, without compulsion or resort to other means affecting their competency, were admissions or confessions free from suspicion, and being pertinent to the issue, were admissible in evidence.

4. Where a motion to continue a case was made on the ground that a witness was absent, and it did not appear that he had been subpœnaed, or that he could be reached by *subpœna* and his testimony procured at another term of court, or that the motion was not made for delay, there was no error in overruling it.

(*a.*) Had the showing been full in these respects, the testimony of the absent witness would not have availed the defendant on this trial to rebut the presumption of malice.

5. Testimony as to conversations between the person alleged to have been wronged by the real estate agent, the son and assistant of the latter and the owner of the house, was admissible to show the falsehood of the charge published; and the absence of the defendant was immaterial, the conversations having transpired prior to his connection with the matter, and having relation only to the transaction which the defendant alleged was reported to him, and out of which the publication grew.

6. The proprietor or publisher of a newspaper containing the defamatory matter was a competent witness, and if he refused to testify in the case, or to state the real name of the author of the publication, he was to be considered as the author himself, and was liable to indictment and punishment as such; and he might moreover be punished for a contempt of court, as any other witness refusing to testify.

(*a.*) The fact that the witness had been indicted for the same offence was not available to shield him from the consequences of disobedience to the precept under which he was brought into court. Nor did it appear that he was called on to testify to facts tending to criminate himself, and upon then claiming his privilege, was compelled to state such facts; but he refused to testify at all.

7. The verdict was not only sustained, but was required, by the evidence.

February 26, 1887.

Criminal Law. Libel. Justification. Charge of Court. Evidence. Malice. Witness. Contempt. Constitutional Law. Before Judge CLARKE. City Court of Atlanta. September Term, 1885.

To the report contained in the decision, it is only necessary to add, in explanation of the fifth division thereof, that

G. W. Adair testified that the negotiations with reference to the house which Rucker desired to occupy as a tenant were carried on by his son and clerk, Forrest; that Forrest had stated to him that Rucker had made a purchase from one Johnson, who had a lease on the house which had some five months to run before expiring; that Rucker took charge of the stock and house; that about the end of the first month, Forrest told him that Lumpkin had bought the property and desired to get rid of Rucker, whereupon Rucker made sale of his stock and gave up the house; and that every allegation in the article published was false.

Forrest Adair corroborated the testimony of his father, and added that he himself carried on the negotiations with Rucker, and his father had nothing to do with the transaction, except that the witness would report and consult with him, and that his father approved and ratified what he had done.

This testimony was objected to, but was admitted.

W. F. WRIGHT; JAMES O'NEILL, for plaintiff in error.

H. C. GLENN, solicitor city court, by W. P. HILL; JAS. MAYSON, for the State.

HALL, Justice.

Pledger was found guilty of the offence of libel for writing and publishing in a newspaper printed in the city of Atlanta, called *The Defiance*, the following article of and concerning one George W. Adair, viz:

"After the Honorable H. A. Rucker lost his position in the revenue service for no other reason than that he was a negro, he commenced the business of a confectioner, having purchased the business from a white man; and at the end of the month, when the rent was due, a philanthropist, Adair by name, who is a great friend of the negro, called upon him and informed him of his desire to keep him hemmed in for fear he might lose his civilization, and that to win it was not prudent that he should do business on that street. The consequence was that this young man had to sell out at a loss. Now, let colored

men, when they want to rent houses, go to Messrs. E. M. Roberts, or Scott, or to somebody else, and leave this old 'skunk' to himself to 'stink himself to death.' Don't forget that it is Adair, the real estate agent.''

Upon being arraigned, he demurred to the indictment, because the article set out in the indictment is not libelous, and the matter alleged therein, if written and published, did not tend to blacken the memory of one who is dead, or the honesty, virtue, integrity or reputation of George W. Adair, and thereby expose him to public hatred, contempt or ridicule. This demurrer was overruled, and Pledger excepted, and made a motion for new trial on the following grounds, which was likewise overruled.

(1), (2.) The first and second grounds allege error in overruling the demurrer.

(3.) Because ''the court refused, upon the request of counsel in writing, to charge that, in all prosecutions or indictments for libels, the truth may be given in evidence; and did charge that if the same was given in evidence, they could nevertheless find the defendant guilty, the whole charge being adverse to this motion.'' The presiding judge gave only a qualified approval to this ground.

(4.) Because ''nothing said by Pledger in his motion for continuance can be construed or taken against him, and if so, it amounts to no more in law than admissions or confessions.''

(5.) Because ''in the absence of proof of malice on the part of defendant against George W. Adair, the defendant cannot be legally convicted.''

(6.) Because ''the court refused to continue said case on account of the absence of W. C. Moore, by whom the defendant expected to prove that, if such matter was written or published as charged, the same was furnished him as matter of news, occurring in the daily mutations incident to commercial transactions, and to rebut the idea of malice.''

(7.) The seventh ground is disapproved by the court and pronounced to be erroneous.

(8.) Because the court permitted Forrest Adair to repeat any testimony to the jury as to what conversation passed between him and Rucker and J. H. Lumpkin, the owner of the house, the said Pledger not being present.

(9.) " Because the court forced A. W. Burnett, a witness subpœnaed upon the part of the State, who was indicted for the same offence, charged with publishing the identical words as alleged in the said indictment against said Pledger at the same term of the court and by the same grand jury, to testify in the said case as against said Pledger, who was then and there on trial, when the said Burnett declined in the presence of the court to so testify, because it tended to criminate himself, and sending said Burnett to jail until the next morning, and again placing Burnett upon the stand, and upon his again refusing to testify in said case for the same reasons given the day before, imposing a fine then and there upon said Burnett of fifty dollars, and also imprisoning him ten days in the common jail of said county unless he would abandon his privilege as a witness, who, because of said fine and imprisonment, did testify in said case because of the coercion aforesaid."

(10,) (11.) Because the verdict is contrary to law, to evidence, to the weight of evidence, and is without evidence to support it.

1. The demurrer was properly overruled. The matter set out in the indictment was libelous. Code, §§2974, 4521. The very nature of the charge imports malice against the prosecutor, and the avowed object for making it manifests a deep-settled purpose upon the part of the writer to injure his business, and not being rebutted or explained by proof, the presumption stands. This disposes of the first, second and fifth grounds of the motion.

2. The court properly refused the written charge set out in the third ground of the motion. There was no proof before the jury as to the truth of the statements made in the publication. It was error, in the absence of such proof, to charge as to the extent that the truth of the

charges would justify the publication of the libel; but of this the defendant cannot complain, since a charge upon the subject was made at his suggestion; and whether it announced the correct rule of law or not, it did not, under the proof, injuriously affect any right of the defendant.

3. It was competent to give in evidence any statements pertinent to the issues on trial, although they were made by the defendant on oath in open court on his motion to continue the case. Such statements, being made voluntarily and without compulsion, or resort to other means affecting their competency, were certainly admissions or confessions free from suspicion, if they were not of the highest and most deliberate character; and it is not contended that the evidence was not pertinent to the issue. Code, §§3783, 3784, 3785, 3793, 3794.

4. The continuance moved should not have been granted because it did not appear that the absent witness had been *subpœnaed*, or that he could be reached by *subpœna*, and his evidence procured at another term of the court; nor is it clear that the showing was not made for delay. There is nothing in the record to authorize the conclusion that the rules of law as to granting or refusing a continuance had been complied with in the showing made to continue on account of the absence of the witness. It should be made to appear affirmatively that such was the case. Code, §3522, and citations. But even if the showing had been full in these respects, the proof expected to be made by the absent witness would not have availed the defendant on this trial. Whether the statements made and published and alleged to have been furnished by the witness to the defendant, " as matter of news occurring in the daily mutations incident to commercial transactions," be true or false, they would not have been sufficient " to rebut the idea of malice," which arose from the avowed object with which the publication was made, viz. to injure the prosecutor in his business, and to render him odious in the eyes of the public, by characterizing him as a dirty and repul-

sive animal, emitting such offensive odors as would cause others to shun him and eventually result in his death.

5. The testimony that Forrest Adair was permitted to give as to the conversation that passed between him and Rucker and Mr. Lumpkin, the owner of the house, was admissible for the purpose of showing the falsehood of the charge published against the prosecutor. The absence of the defendant when the conversation took place was in this respect wholly immaterial, since it transpired prior to his connection with the matter, and had relation only to the transaction which he alleged was reported to him, and out of which the publication grew.

6. Burnett, as proprietor or publisher of the newspaper containing the defamatory matter, was a competent witness, and if he refused to testify in the case, or to give up the real name of the author of the publication, then he was to be considered the author himself, and was liable to indictment and punishment as such, and might, moreover, be punished for contempt of the court, as any other witness refusing to testify. Code, §4522. The court was fully authorized, therefore, to fine and imprison him for his contumacy in refusing to testify against Pledger. The fact that he had been indicted for the same offense was not available to shield him from the consequences of disobedience to the precept under which he was brought into court, nor is it to be presumed that he would have been compelled in his testimony to depose to any fact tending to criminate himself. He might have declined to answer any question having such a tendency, and he would have been protected had he insisted upon such a right. He did not wait for an opportunity to make the question ; and that he would have had accorded to him every privilege to which he was entitled, we entertain not the slightest doubt. He made no such question, and consequently it was not passed upon by the presiding judge; but apprehending in advance that he might be placed in a perilous position, he refused stub-

bornly, before the exigency had arisen, to testify at all. He surely merited the punishment he received. .

7. The evidence showed that the defendant was the author of the libel; that he caused its publication, and circulated it among the subscribers to the newspaper, consisting very largely of colored people, many of whom had dealt with Adair as a real estate agent. So far from the verdict being against the law and evidence, it was imperatively demanded by both.

Judgment affirmed.