[No. 7284-6-I.   Division One.   October 20, 1980.]

JOHN A. SENEAR, *Respondent,* v. THE DAILY
JOURNAL–AMERICAN, *Petitioner.*

---

*Klingberg & Reitsch, Gerry A. Reitsch, Davis, Wright, Todd, Riese & Jones,* and *P. Cameron DeVore,* for petitioner.

*Lycette, Diamond & Sylvester* and *Lyle Iversen,* for respondent.

*Camden M. Hall* and *G. Richard Hill* on behalf of Allied Daily Newspapers, amici curiae for petitioner.

CALLOW, C.J.—This is an appeal from a Superior Court order compelling disclosure by a newspaper reporter of the names of confidential news sources. The issue before this court is whether a newsperson's privilege against disclosure of confidential news sources in a civil action for libel is to be found in the first amendment of the constitution. While a newspaper's right to publish is firmly established under the First Amendment, left unsettled is whether the First Amendment implicitly guarantees the confidentiality of a newsperson's news sources in the civil context. The existence and extent of a constitutionally based privilege from such disclosure is an issue of first impression in Washington.

John Senear instituted a libel action against the Daily Journal–American, a daily newspaper of general circulation, on January 24, 1978. At that time, Senear was the business agent of the Amalgamated Transit Workers Union in King County. The basis of Senear's libel action was a newspaper story published by the Daily Journal–American on January 2, 1978. The story told of accusations allegedly made by undisclosed union members that Senear, as the union's business agent, had made a "deal" unfavorable to union members with management and had personally encouraged "sickouts." Senear's complaint alleged that the effect of the story, read as a whole, was to impart to readers the impression that he was disloyal to the local union which he represented, was not fit to be its business representative, and cast doubt upon his integrity. The complaint alleged that the article was published in reckless disregard of the truth

and that the newspaper knew, or in the exercise of reasonable care should have known, that the statements were false and would create a false impression. The newspaper's answer to the complaint alleged, among other defenses, that Senear was a "public figure" and that the newspaper made a reasonable investigation of the facts before publication and published the story without malice under a qualified privilege in the belief that the story was true.

In the course of pretrial discovery, Senear served the newspaper with interrogatories which directed the newspaper to disclose the names of union members who furnished certain information for the story. The Daily Journal–American refused to answer those interrogatories on the ground that such answer would disclose confidential sources.[1] Senear moved for an order to compel answers to

---

[1] "INTERROGATORY No. 1: Referring to the news story carried January 2, 1978 headed '"Sick–out" dissidents oppose offer—Metro union split over settlement,' what is the source of the following statement:
'However one well–placed union source insists a deal was made. "Somewhere down the line there was some kind of deal made to get us (the union) through the holiday season (the most effective time to strike)."'
"Who was the 'well–placed union source' and when and where was the statement obtained?
"ANSWER: Defendant objects to answering this interrogatory on the ground that such answer would disclose confidential sources.
"INTERROGATORY No. 2: Who were the well–placed union sources referred to in that part of the article which reads:
'Despite public statements to the contrary, Senear has personally encouraged sickouts, according to two well–placed union sources.'
"ANSWER: Defendant objects to answering this interrogatory on the ground that such answer would disclose confidential sources.
"INTERROGATORY No. 3: Referring to that portion of the article which reads:
'Senear has been accused privately by union members of making a deal with Metro in return for a management job once contract negotiations have settled.'
"Who were the union members referred to and what did they say, and to whom did they communicate the accusation?
"ANSWER: The names of the persons who will confirm the fact that such accusations were made are:
> Dave Low
> Mike McGinnis
> Dan Linville"

interrogatories. On January 10, 1979, a Superior Court judge entered the following order:

ORDERED, ADJUDGED AND DECREED that the answers submitted by defendant fail to answer the Interrogatories propounded and that the matter inquired into is not privileged and the defendant is hereby compelled to wholly answer Plaintiff's First Interrogatories to Defendant.

Discretionary review was granted, and the order compelling answers was stayed pending this court's resolution of the following issues:

1. Is either an absolute or qualified newsperson's privilege against disclosure of confidential news sources in a civil action for libel to be found in the first amendment of the constitution?

2. Are the courts or the legislature the proper forum for the creation of a newsperson's privilege against disclosure of confidential news sources?

■ A number of states provide newspersons a *statutory* privilege of varying degree,[2] but Washington has no such statutory privilege. Neither does the common law recognize a privilege which would support a newsperson's refusal to disclose confidential news sources. *United States v. Liddy*, 354 F. Supp. 208, 214 (D.D.C. 1972). Therefore, the scope of discovery at the trial court was governed by CR 26 and CR 33, which are to be given a broad and liberal construction, *McGugart v. Brumback*, 77 Wn.2d 441, 463 P.2d 140 (1969), permitting inquiry as to any matter which is or may become relevant to the subject matter involved in the action or which appears reasonably calculated to lead to the discovery of admissible evidence, subject only to the objection of privilege. *Bushman v. New Holland Div. of Sperry Rand Corp.*, 83 Wn.2d 429, 518 P.2d 1078 (1974); CR 33(b); CR 26(b)(1).

Petitioner Daily Journal–American, supported by Allied Daily Newspapers as amicus curiae, urge us to find in the

---

[2]In 1976, 26 states provided some degree of newsperson's privilege by statute. *See* 26 Clev. St. L. Rev. 453, 456 (1977).

First Amendment either an absolute or qualified news-person's privilege against disclosure of news sources in civil cases. They maintain that newspapers frequently rely on persons who, because of their position, have "inside" infor-mation of vital public concern and who are willing to pro-vide a newspaper with this information only upon the condition that their identity remain confidential. They maintain that where, as alleged here, the informants hold sensitive and vulnerable positions, forced disclosure of their identities to civil litigants may so endanger their profes-sional career and personal safety that they, and other news sources, will be inhibited from furnishing information in the future—to the detriment of both a free and effective press and the general public. They contend that, at a mini-mum, a qualified privilege is required to protect this news-gathering process and that such a privilege is to be found in the free press clause of the First Amendment. They point this court to decisions by other state and federal courts which have so held.

Respondent Senear maintains that no absolute or quali-fied newsperson's privilege is to be found in the First Amendment, and if there is to be such a privilege, it should be for the legislature and not the judiciary to create.

## I
### ABSOLUTE PRIVILEGE

■ Courts that have considered the issue have unani-mously concluded that the First Amendment affords the newsperson no *absolute* privilege of nondisclosure of confi-dential news sources—whether it be in the criminal or civil context. In *Carey v. Hume*, 492 F.2d 631 (D.C. Cir. 1974), the court stated at page 639:

We have rejected the only contention made to us by appellant, and that was the pre–*Branzburg [Branzburg v. Hayes*, 408 U.S. 665, 33 L. Ed. 2d 626, 92 S. Ct. 2646 (1972)] claim that there either is, or should be, an abso-lute First Amendment barrier to the compelled disclosure by a newsman of his confidential sources under any cir-cumstances. That was not, in our view, the law before

*Branzburg,* and it is certainly not the law after, in either civil or criminal proceedings.

The First Amendment does not, of itself, create in newspersons an absolute privilege of nondisclosure of sources. *See, e.g., Herbert v. Lando,* 441 U.S. 153, 60 L. Ed. 2d 115, 99 S. Ct. 1635 (1979); *Branzburg v. Hayes,* 408 U.S. 665, 33 L. Ed. 2d 626, 92 S. Ct. 2646 (1972); *Silkwood v. Kerr–McGee Corp.,* 563 F.2d 433 (10th Cir. 1977); *Baker v. F & F Inv.,* 470 F.2d 778 (2d Cir. 1972), *cert. denied,* 411 U.S. 966, 36 L. Ed. 2d 686, 93 S. Ct. 2147 (1973); *Garland v. Torre,* 259 F.2d 545 (2d Cir.), *cert. denied,* 358 U.S. 910, 3 L. Ed. 2d 231, 79 S. Ct. 237 (1958); *Caldero v. Tribune Publishing Co.,* 98 Idaho 288, 562 P.2d 791, *cert. denied,* 434 U.S. 930, 54 L. Ed. 2d 291, 98 S. Ct. 418 (1977). *See also* Annot., 7 A.L.R.3d 591 (1966).

## II
### QUALIFIED PRIVILEGE

To say that there is no *absolute* privilege is not to say there is *no* privilege or that no heightened standard of necessity and relevance must be met prior to disclosure of a newsperson's confidential sources. Many courts have found in the First Amendment a qualified newsperson's privilege—if indeed "privilege" is the proper term—of nondisclosure in the civil context, albeit expressing that "privilege" in varying ways.

The claim of a qualified newsperson's "privilege" in a civil action, derived from the First Amendment, has met with the most success in federal courts. *See Silkwood v. Kerr–McGee Corp.,* 563 F.2d 433 (10th Cir. 1977); *Carey v. Hume,* 492 F.2d 631 (D.C. Cir. 1974); *Baker v. F & F Inv.,* 470 F.2d 778 (2d Cir. 1972), *cert. denied,* 411 U.S. 966, 36 L. Ed. 2d 686, 93 S. Ct. 2147 (1973); *Citicorp v. Interbank Card Ass'n,* 4 Media L. Rptr. 1429 (S.D.N.Y. 1978); *In re Consumers Union,* 4 Media L. Rptr. 2119 (S.D.N.Y. 1978); *Gulliver's Periodicals, Ltd. v. Chas. Levy Circulation Co.,* 455 F. Supp. 1197 (N.D. Ill. 1978); *Zerilli v. Bell,* 458 F.

Supp. 26 (D.D.C. 1978); *Altemose Constr. Co. v. Building & Constr. Trades Council,* 443 F. Supp. 489 (E.D. Pa. 1977); *Gilbert v. Allied Chem. Corp.,* 411 F. Supp. 505 (E.D. Va. 1976); *Apicella v. McNeil Laboratories, Inc.,* 66 F.R.D. 78 (E.D.N.Y. 1975); *Loadholtz v. Fields,* 389 F. Supp. 1299 (M.D. Fla. 1975); *Democratic Nat'l Comm. v. McCord,* 356 F. Supp. 1394 (D.D.C. 1973); *Adams v. Associated Press,* 46 F.R.D. 439 (S.D. Tex. 1969), *cert. dismissed,* 402 U.S. 901, 28 L. Ed. 2d 642, 91 S. Ct. 1266 (1971). *See also Anderson v. Nixon,* 444 F. Supp. 1195 (D.D.C. 1978). Some state courts have also found in the First Amendment a qualified newsperson's "privilege" in the context of civil litigation. *See Winegard v. Oxberger,* 258 N.W.2d 847 (Iowa 1977), *cert. denied,* 436 U.S. 905, 56 L. Ed. 2d 402, 98 S. Ct. 2234 (1978); *Opinion of the Justices,* 117 N.H. 386, 373 A.2d 644 (1977); *Goldfeld v. Post Publishing Co.,* 4 Media L. Rptr. 1167 (Conn. Super. Ct. 1978); *Connecticut State Bd. of Labor Relations v. Fagin,* 33 Conn. Supp. 204, 370 A.2d 1095 (Conn. Super. Ct. 1976); *Rancho La Costa, Inc. v. Penthouse Int'l, Ltd.,* 4 Media L. Rptr. 1564 (Cal. Super. Ct. 1978).[3]

The decisions recognize that two compelling interests are at stake: the interest in allowing the press unfettered access to sources of information and the interest in allowing courts and litigants unimpaired access to testimony and relevant information in civil litigation. *See Caldero v. Tribune Publishing Co., supra* (Donaldson, J., dissenting). Since each interest is of fundamental importance, a balancing process is utilized to resolve the apparent conflict. The result is a case–by–case determination where disclosure is compelled

---

[3]Some, though not all, of these decisions involve a newsperson who is not a party in the underlying action. *See, e.g., Silkwood v. Kerr–McGee Corp., supra.* However, the analyses of the above courts on the issue of "privilege" generally make no distinction between instances where disclosure of confidential news sources is sought from newspersons who are a party in the underlying action as opposed to those that are a nonparty. *See, e.g., Silkwood v. Kerr–McGee Corp., supra.*

only when the party seeking disclosure meets some varying standard of necessity and relevance.[4]

The determination of whether the First Amendment confers a qualified "privilege" or, more precisely, serves to protect a newsperson's confidential source by requiring a heightened degree of relevance and necessity prior to disclosure, rests primarily upon the meaning to be placed upon *Garland v. Torre, supra,* and *Branzburg v. Hayes, supra.*

*Garland v. Torre, supra,* asserted that the First Amendment conferred a newsperson's privilege of nondisclosure of confidential news sources in a civil case.[5] *Garland* involved a libel action against Columbia Broadcasting System, Inc. (CBS) for allegedly defamatory statements published in a newspaper article. The newspaper reporter attributed the statements to a CBS "network executive." In an attempt to discover the identity of the alleged detractor, the plaintiff *first* deposed three CBS executives. Each denied making the statements in question and denied knowing the identity of the network executive referred to in the article. The plaintiff then deposed the newspaper reporter. The reporter refused to reveal her source and as a consequence was held in criminal contempt. The court stated the issue as whether

---

[4]The premise underlying this balancing approach is not unlike that underlying the balancing process used when a criminal defendant seeks disclosure of an unidentified police informer. The so-called "informer's privilege," like the newsperson's privilege, is based on the proposition that anonymity so afforded citizens will encourage them to communicate their knowledge of crimes to the police. *See State v. Burleson,* 18 Wn. App. 233, 566 P.2d 1277 (1977). The "informer's privilege" is not absolute; the test for disclosure requires a balancing of two competing interests: the public interest in protecting the flow of information against the defendant's right to prepare his defense. *Roviaro v. United States,* 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957).

[5]Earlier cases have held that, absent a statutory privilege, a newsperson has no privilege of nondisclosure of news sources in either the civil context or before a grand jury. *See, e.g., Joslyn v. People,* 67 Colo. 297, 184 P. 375, 7 A.L.R. 339 (1919); *Clein v. State,* 52 So. 2d 117 (Fla. 1950); *Pledger v. State,* 77 Ga. 242, 3 S.E. 320 (1887); *In re Grunow,* 84 N.J.L. 235, 85 A. 1011 (1913). These decisions are largely premised upon a claim of absolute privilege and do not address the assertion of a qualified "privilege," as here.

the interest to be served by compelling the witness to testify justified some impairment of the First Amendment. *Garland v. Torre, supra* at 548. Disclosure of the news source was compelled, the court stating at pages 548 and 549 that "freedom of the press, precious and vital though it is to a free society, is not an absolute" and that "it too must give place under the Constitution to a paramount public interest in the fair administration of justice." The court added:

> It is to be noted that we are not dealing here with the use of the judicial process to force a wholesale disclosure of a newspaper's confidential sources of news, nor with a case where the identity of the news source is of doubtful relevance or materiality. . . . The question asked of the appellant went to the heart of the plaintiff's claim.

(Citations omitted.) *Garland v. Torre, supra* at 549–50.

*Branzburg v. Hayes,* 408 U.S. 665, 33 L. Ed. 2d 626, 92 S. Ct. 2646 (1972) held that a newsperson had no First Amendment privilege—absolute or qualified—to refuse to appear before a grand jury and divulge confidential news sources.

The decision rests upon a determination that the burden disclosure would have on the news–gathering process was not so great as the importance of disclosure to the fair and effective functioning of a grand jury and the criminal justice system.

> On the records now before us, we perceive no basis for holding that the public interest in law enforcement and in ensuring effective grand jury proceedings is insufficient to override the consequential, but uncertain, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial.

*Branzburg v. Hayes, supra* at 690–91.

> Accepting the fact, however, that an undetermined number of informants not themselves implicated in crime will nevertheless, for whatever reason, refuse to talk to newsmen if they fear identification by a reporter in an

official investigation, we cannot accept the argument that the public interest in possible future news about crime from undisclosed, unverified sources must take precedence over the public interest in pursuing and prosecuting those crimes reported to the press by informants and in thus deterring the commission of such crimes in the future.

*Branzburg v. Hayes, supra* at 695. The opinion noted that newspersons are not totally devoid of First Amendment protection in the grand jury context.

Nor is it suggested that news gathering does not qualify for First Amendment protection; without some protection for seeking out the news, freedom of the press could be eviscerated. . . . No attempt is made to require the press to publish its sources of information or indiscriminately to disclose them on request.

*Branzburg v. Hayes, supra* at 681–82. The plurality opinion also observed:

This conclusion itself involves no restraint on what newspapers may publish or on the type or quality of information reporters may seek to acquire, *nor does it threaten the vast bulk of confidential relationships between reporters and their sources.* Grand juries address themselves to the issues of whether crimes have been committed and who committed them. Only where news sources themselves are implicated in crime or possess information relevant to the grand jury's task need they or the reporter be concerned about grand jury subpoenas. Nothing before us indicates that a large number or percentage of *all* confidential news sources falls into either category and would in any way be deterred by our holding that the Constitution does not, as it never has, exempt the newsman from performing the citizen's normal duty of appearing and furnishing information relevant to the grand jury's task.

(First italics ours.) *Branzburg v. Hayes, supra* at 691. The plurality opinion concluded:

Finally, as we have earlier indicated, news gathering is not without its First Amendment protections, and grand jury investigations if instituted or conducted other than in good faith, would pose wholly different issues for resolution under the First Amendment. Official harassment

of the press undertaken not for purposes of law enforcement but to disrupt a reporter's relationship with his news sources would have no justification. Grand juries are subject to judicial control and subpoenas to motions to quash. We do not expect courts will forget that grand juries must operate within the limits of the First Amendment as well as the Fifth.

(Footnote omitted.) *Branzburg v. Hayes, supra* at 707–08. Justice Powell, concurring, allowed the newsperson greater First Amendment protection than the plurality did, stating:

The Court does not hold that newsmen, subpoenaed to testify before a grand jury, are without constitutional rights with respect to the gathering of news or in safeguarding their sources. . . . .

As indicated in the concluding portion of the opinion, the Court states that no harassment of newsmen will be tolerated. If a newsman believes that the grand jury investigation is not being conducted in good faith he is not without remedy. Indeed, if the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationships without a legitimate need of law enforcement, he will have access to the court on a motion to quash and an appropriate protective order may be entered. The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case–by–case basis accords with the tried and traditional way of adjudicating such questions.

In short, the courts will be available to newsmen under circumstances where legitimate First Amendment interests require protection.

(Footnote omitted.) *Branzburg v. Hayes, supra* at 709–10 (Powell, J., concurring). *See also Saxbe v. Washington Post Co.,* 417 U.S. 843, 859–64, 41 L. Ed. 2d 514, 94 S. Ct. 2811 (1974) (Powell, J., dissenting).

*Branzburg* was decided in the context of a *criminal* prosecution. The opinion contains language which supports

a finding of a qualified newsperson's "privilege" in a civil context, and language which rebukes such a finding. Read broadly, the *Branzburg* case denies the existence of a newsperson's privilege under *any* circumstances; read narrowly, the *Branzburg* opinion only denies the existence of a newsperson's privilege before a grand jury.[6] Whether a newsperson's sources in a civil setting are to be afforded weightier consideration and therefore greater protection than in the context of a criminal prosecution is not passed upon.

Two state courts have read *Branzburg* broadly to mean that the First Amendment, in the *civil* context, confers no qualified newsperson's privilege and requires no heightened showing of relevance and necessity prior to disclosure. *Caldero v. Tribune Publishing Co.,* 98 Idaho 288, 562 P.2d 791, *cert. denied,* 434 U.S. 930, 54 L. Ed. 2d 291, 98 S. Ct. 418 (1977); *Dow Jones & Co. v. Superior Court,* 364 Mass. 317, 303 N.E.2d 847 (1973). *See also Ammerman v. Hubbard Broadcasting, Inc.,* 91 N.M. 250, 572 P.2d 1258 (1977); *In re Goodfader's Appeal,* 45 Haw. 317, 367 P.2d 472 (1961). These decisions only impose a restriction against compelled disclosures when necessary to protect newspeople from harassment and frivolous inquiries under the rules of discovery. In *Caldero v. Tribune Publishing Co., supra,* it was stated at 98 Idaho at 294, 562 P.2d at 797:

> Therefore our reading of *Branzburg v. Hayes, supra,* is to the effect that no newsman's privilege against disclosure of confidential sources founded on the First Amendment exists in an absolute or qualified version. The only restrictions against compelled disclosure appear to be in those cases where it is demonstrably intended to unnecessarily harass members of the news media on a broad scale by means having an unnecessary impact on protected rights of speech, press or association.

---

[6]The two readings of *Branzburg* are reflected in the majority and dissenting opinions of *Caldero v. Tribune Publishing Co.,* 98 Idaho 288, 562 P.2d 791, *cert. denied,* 434 U.S. 930, 54 L. Ed. 2d 291, 98 S. Ct. 418 (1977).

The *Caldero* court also read Justice Powell's concurring opinion in *Branzburg* as not to advocate a qualified privilege, but only to "state that if an 'investigation is not being conducted in good faith [the newsman] is not without remedy.'" *Caldero v. Tribune Publishing Co.,* 98 Idaho at 293, 562 P.2d at 796.

These courts also place reliance upon commentators' conclusions that new testimonial privileges are an obstacle to the search for truth and hence should be disfavored, *see* E. Cleary, *McCormick's Evidence* § 77, at 156–60 (2d ed. 1972); 8 J. Wigmore, *Evidence* § 2192, at 70–74 (rev. ed. 1961). The commentators generally refer to *absolute* testimonial privileges in this light.[7]

Decisions which have found in the First Amendment a qualified newsperson's "privilege," or require a heightened showing of relevance and necessity prior to disclosure, limit *Branzburg* to criminal cases. Underlying these decisions is the premise that a newsperson's sources in civil proceedings are to be afforded weightier consideration and therefore greater protection than in criminal proceedings. *See Baker v. F & F Inv.,* 470 F.2d 778, 784–85 (2d Cir. 1972), *cert. denied,* 411 U.S. 966, 36 L. Ed. 2d 686, 93 S. Ct. 2147 (1973); *Gilbert v. Allied Chem. Corp.,* 411 F. Supp. 505, 510 (E.D. Va. 1976); *United States v. Liddy,* 354 F. Supp. 208, 213 n.14 (D.D.C. 1972). Moreover, these decisions embrace the view that the news–gathering process is entitled to First Amendment protection. *See, e.g., Gulliver's Periodicals, Ltd. v. Chas. Levy Circulation Co.,* 455 F. Supp. 1197 (N.D. Ill. 1978) (citing authorities).

In *Carey v. Hume,* 492 F.2d 631 (D.C. Cir. 1974), it was noted that *Branzburg* left intact the approach taken in *Garland* "that the court will look to the facts on a case–by–

---

[7] *E.g.,* E. Cleary, *McCormick's Evidence* § 77, at 159 (2d ed. 1972) cites with approval *Caldwell v. United States,* 434 F.2d 1081 (9th Cir. 1970), which utilized a balancing process in determining whether a newsperson must reveal confidential news sources to a grand jury. *Caldwell* was reversed *sub nom. Branzburg v. Hayes,* 408 U.S. 665, 33 L. Ed. 2d 626, 92 S. Ct. 2646 (1972).

case basis in the course of weighing the need for the testimony in question against the claims of the newsman that the public's right to know is impaired." *Carey v. Hume, supra* at 636. The court added that "[t]he values resident in the protection of the confidential sources of newsmen certainly point towards compelled disclosure from the newsman himself as normally the end, and not the beginning, of the inquiry." *Carey v. Hume, supra* at 638. *Silkwood v. Kerr–McGee Corp.*, 563 F.2d 433, 437 (10th Cir. 1977), concluded that the presence of a qualified newsperson's privilege in the civil context "is no longer in doubt." The following statement in *Gilbert v. Allied Chem. Corp., supra*, is representative of the view held by those courts favoring a newsperson's qualified "privilege":

> The Court recognizes that to effectively gather information for the conveyance of news to the public, it is often necessary for reporters to make assurances either not to identify the source of the information broadcast or published, or to broadcast or publish only part of the information obtained, or both. If a news station or newspaper is forced to reveal the confidences of its reporters, the sources so disclosed, other confidential sources of other reporters, and potential confidential sources will be significantly deterred from furnishing further information to the press. Information lost to the press is information lost to the public; unnecessary impediments to a newsman's ability to gather facts, follow leads, and assimilate sources can restrict the quality of our news as effectively as censorship activities. Accordingly, the Court holds that the First Amendment, protecting as it does the free flow of information, provides newsmen a privilege from revealing their confidential news sources in civil proceedings that may be abrogated only in rare and compelling circumstances.

*Gilbert v. Allied Chem. Corp., supra* at 508.[8]

---

[8]*See also Cervantes v. Time, Inc.*, 464 F.2d 986 (8th Cir. 1972), *cert. denied*, 409 U.S. 1125, 35 L. Ed. 2d 257, 93 S. Ct. 939 (1973), wherein the court noted that to

> routinely grant motions seeking compulsory disclosure of anonymous news sources without first inquiring into the substance of a libel allegation would utterly emasculate the fundamental principles that underlay the line of cases

In deciding whether a newsperson should be compelled to reveal a confidential news source in a civil case, the inquiry is to the extent to which pretrial discovery has been conducted, the fruits of that discovery, and the resulting demonstrated need or lack of need. *Mize v. McGraw–Hill, Inc.,* 82 F.R.D. 475 (S.D. Tex. 1979). In *Silkwood v. Kerr–McGee Corp., supra,* the following considerations were set forth to be weighed when determining whether disclosure should be ordered: (1) whether the party seeking information has independently attempted to obtain the information elsewhere and has been unsuccessful; (2) whether the information goes to the heart of the matter; (3) whether the information is relevant; and (4) the type of controversy. *Silkwood v. Kerr–McGee Corp., supra* at 438. *Hart v. Playboy Enterprises, Inc.,* 4 Media L. Rptr. 1616 (D. Kan. 1978), concluded that in a civil case the party seeking to compel a newsperson to disclose his confidential source must show a substantial need and inability without undue hardship to obtain the information by other means. *Cf.* Fed. R. Civ. P. 26(b)(3). Whatever criteria are followed, compulsory disclosure in the course of a "fishing expedition" is not permitted. *Silkwood v. Kerr–McGee Corp., supra* at 438. Common to all the tests is a requirement that there be a compelling showing of relevance and necessity before disclosure will be required.

The protection of a newsperson's confidential sources is of sufficient importance to warrant exclusion from discovery in civil proceedings in *some* instances. *Apicella v. McNeil Laboratories, Inc.,* 66 F.R.D. 78 (E.D.N.Y. 1975). If confidential news sources are to be excluded from discovery in some instances, but not others, some weighing process by

---

articulating the constitutional restrictions to be engrafted upon the enforcement of State libel laws.

*Cervantes v. Time, Inc., supra* at 993. The court added in a footnote that to compel a newsman to breach a confidential relationship because a libel suit has been filed would lead to an excessive restraint on the scope of legitimate news–gathering activity. The granting of the motion for summary judgment without first compelling disclosure of the defendant's anonymous news sources was affirmed.

the decision maker must be contemplated. Such a process does not create a "virtually impenetrable constitutional shield," *Branzburg v. Hayes,* 408 U.S. 665, 697, 33 L. Ed. 2d 626, 92 S. Ct. 2646 (1972); on the contrary, knowledge of the identity of the news source will generally be highly relevant to the plaintiff's case. *See, e.g., Carey v. Hume,* 492 F.2d 631, 636–37 (D.C. Cir. 1974); *Winegard v. Oxberger,* 258 N.W.2d 847, 852 (Iowa 1977), *cert. denied,* 436 U.S. 905, 56 L. Ed. 2d 402, 98 S. Ct. 2234 (1978). *Cf. Cervantes v. Time, Inc.,* 464 F.2d 986 (8th Cir. 1972), *cert. denied,* 409 U.S. 1125, 35 L. Ed. 2d 257, 93 S. Ct. 939 (1973).[9]

■ Under the rules of civil procedure, the trial court has discretion to determine whether a party is entitled to have interrogatories answered, and the trial judge's decision will not be disturbed absent an abuse of discretion. *Weber v. Biddle,* 72 Wn.2d 22, 431 P.2d 705 (1967); *Teratron Gen. v. Institutional Investors Trust,* 18 Wn. App. 481, 569 P.2d 1198 (1977). As stated in *Herbert v. Lando,* 441 U.S. 153, 60 L. Ed. 2d 115, 99 S. Ct. 1635 (1979), "when a discovery demand arguably impinges on First Amendment rights a [trial] court should measure the degree of relevance required in light of both the private needs of the parties

---

[9]Petitioner Daily Journal–American asserts in its answer to the complaint that Senear is a "public figure." This issue remains unsettled at this stage of the proceedings. If Senear is a "public figure," he must prove that the publication was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of the truth. *New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964); *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975 (1967); *Grayson v. Curtis Publishing Co.,* 72 Wn.2d 999, 436 P.2d 756 (1967). If Senear is not a "public figure," and if no conditional privilege is to be recognized here, he must prove negligence on the part of the defendant. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974); *Taskett v. KING Broadcasting Co.,* 86 Wn.2d 439, 546 P.2d 81 (1976); *Exner v. American Medical Ass'n,* 12 Wn. App. 215, 529 P.2d 863 (1974). Regardless of the test, evidence tending to establish publication without a factual basis, or upon information obtained from sources whose veracity is questionable, is evidence central to a libel plaintiff's burden of proof. *See Herbert v. Lando,* 441 U.S. 153, 60 L. Ed. 2d 115, 99 S. Ct. 1635 (1979); *Gertz v. Robert Welch, Inc., supra; St. Amant v. Thompson,* 390 U.S. 727, 20 L. Ed. 2d 262, 88 S. Ct. 1323 (1968); *Curtis Publishing Co. v. Butts, supra.*

and the public concerns implicated." *Herbert v. Lando, supra* at 179 (Powell, J., concurring).

Respondent Senear's brief raises in one sentence the contention that the legislature and not the judiciary is the proper forum for the creation of any newsperson's privilege against disclosure of confidential news sources. Petitioner Daily Journal–American and amicus curiae have not addressed this contention. No cases are cited which discuss this proposition, nor have any decisions implicitly relied upon this reasoning in addressing the issue present here.

█ Much of the law of privileged communication in Washington is statutory. *E.g.,* RCW 5.60.060. *See generally* ER 501, Comment. These statutory privileges are established, not as a matter of constitutional law, but to protect or foster a specific relationship or interest as a matter of public policy. ER 501, Comment. Washington courts have repeatedly stated that the legislature, not the judiciary, is the more appropriate forum to make the public policy determinations underlying the creation of such privileges. Hence, Washington courts, when asked to create a testimonial privilege for *public policy reasons,* have unanimously left that function to the legislature. *See State v. Cohen,* 19 Wn. App. 600, 576 P.2d 933 (1978); *State v. Roberts,* 14 Wn. App. 727, 544 P.2d 754 (1976); *State v. Johnson,* 9 Wn. App. 766, 514 P.2d 1073 (1973); *Cook v. King County,* 9 Wn. App. 50, 510 P.2d 659 (1973). *Cf. State ex rel. Haugland v. Smythe,* 25 Wn.2d 161, 169 P.2d 706, 165 A.L.R. 1295 (1946).

The assertion of a newsperson's privilege based on public policy considerations is not before this court. The sole assertion by petitioner Daily Journal–American is that the First Amendment guarantees the confidentiality of a newsperson's news sources in civil proceedings in some instances. Undeniably the meaning and scope of a constitutional provision is exclusively a judicial function. Therefore, it cannot be said that if there is to be such a privilege,. in the context asserted here, that it should be for the legislature to create.

There remains the contention that the judicial recognition of a newsperson's privilege founded on the First Amendment amounts to judicial legislation—said by some to be objectionable in our system of government.

> Up to now, neither the legislature nor the county and municipal governments nor even the Congress has assumed that there exists a constitutional right and a correlative duty [such as is asserted here]. The judiciary should recognize that other branches of government, as Mr. Justice Holmes observed, "are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts." . . . Courts must thus operate under a degree of restraint which, while assuring to each person every natural right and every right vouchsafed him by the constitutions, does not enlarge upon those rights in such a way as to disparage the constitutional powers of the legislative and executive branches or abridge their constitutional capabilities.

*Hendrix v. Seattle,* 76 Wn.2d 142, 152, 456 P.2d 696 (1969), *cert. denied,* 397 U.S. 948, 25 L. Ed. 2d 129, 90 S. Ct. 969 (1970). No court has expressly addressed this aspect of the judicial recognition of a newsperson's privilege—particularly those courts, state and federal, which have recognized a qualified newsperson's "privilege."

In *Branzburg v. Hayes,* 408 U.S. 665, 33 L. Ed. 2d 626, 92 S. Ct. 2646 (1972), after holding that the First Amendment conferred no absolute or qualified privilege upon newspersons to refuse to appear before a grand jury and to there divulge confidential news sources, the court added:

> At the federal level, Congress has freedom to determine whether a statutory newsman's privilege is necessary and desirable and to fashion standards and rules as narrow or broad as deemed necessary to deal with the evil discerned and, equally important, to refashion those rules as experience from time to time may dictate. There is also merit in leaving state legislatures free, within First Amendment limits, to fashion their own standards in light of the conditions and problems with respect to the relations between law enforcement officials and press in their own areas. It goes without saying, of course, that we are powerless to bar state courts from responding in their

own way and construing their own constitutions so as to recognize a newsman's privilege, either qualified or absolute.

*Branzburg v. Hayes, supra* at 706. So also can *Caldero v. Tribune Publishing Co.*, 98 Idaho 288, 562 P.2d 791, *cert. denied,* 434 U.S. 930, 54 L. Ed. 2d 291, 98 S. Ct. 418 (1977), and *Dow Jones & Co. v. Superior Court,* 364 Mass. 317, 303 N.E.2d 847 (1973), be read, at most, to only implicitly reason that a court mandated privilege would constitute an improper piece of judicial legislation.

■ We conclude that a qualified privilege exists in favor of the petitioner at this stage of these *civil* proceedings. The respondent, Senear, must show and the trial court must find, before requiring disclosure of a newsperson's sources: (1) that there is independent merit to the claim of libel of the plaintiff by the defendant in the defamation action itself; (2) that the First Amendment interests of the news media are outweighed by the rights and interests of the litigant; (3) that he, the plaintiff, had made an independent attempt to secure the information sought elsewhere, has been unsuccessful, and has demonstrated that the information is not otherwise available; (4) that the information sought is relevant, material, and of critical importance to the presentation of his case.

The order of the trial court compelling answers which would necessitate the disclosure of a newsperson's sources is vacated. The cause is remanded for the conduct of a hearing into the existence or absence of the circumstances heretofore reiterated, the entry of findings thereon, and the entry of such further orders on discovery proceedings as may be consistent with this opinion.

JAMES, J., concurs in the result.

WILLIAMS, J. (dissenting)—One of the Daily Journal–American's defenses to Mr. Senear's complaint for libel is that the news article "was published without malice as part

of the normal business of said newspaper as a true or sub-stantially true and fair report . . ." I do not believe that the trial court in its task of finding the truth abused its discretion in compelling answers to the interrogatories. The court's order should be upheld.

Reconsideration denied December 24, 1980.

Review granted by Supreme Court February 13, 1981.