SCHREIBER ET AL., APPELLEES, *v.* MULTIMEDIA OF OHIO, INC. ET AL., APPELLANTS.

(No. C-860454—Decided October 21, 1987.)

*Rendings, Fry, Kiely & Dennis, David Winchester Peck* and *Kerry Beringhaus,* for appellees.

*Frost & Jacobs* and *Susan Grogan Faller,* for appellants.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County.

Defendants-appellants Multimedia of Ohio, Inc., Dave Robinson and Richard Venn (collectively, "defendants") have taken the instant appeal from an order of the court below compelling their disclosure of "outtake" videotape,[1] reporter notes and scripts compiled in connection with an allegedly defamatory news broadcast. On appeal, defendants contend that compelled disclosure of the outtakes, notes and scripts, which they assert constitute aspects of their editorial processes, infringes upon the First Amendment guarantees of free speech and freedom of the press.

On the evening of March 1, 1985, defendant Dave Robinson ("Robinson"), a news reporter employed by defendant Multimedia of Ohio, Inc. ("Multimedia"), and defendant Richard Venn ("Venn"), a Multimedia cameraman, accompanied a police officer for the city of Cincinnati on routine patrol to gather information and film footage for a proposed series

---

[1] "Outtakes" may be defined in this context as the video and audio portions of videotape taken in connection with, but not used in, a news broadcast.

on local enforcement of state drunk driving laws. While on patrol in the downtown area of Cincinnati, the police officer stopped plaintiff John T. Schreiber ("Schreiber"). After administering a series of psychomotor tests, the officer placed Schreiber under arrest and transported him to a local station where Schreiber voluntarily submitted to an intoxilyzer test. Robinson and Venn recorded the events preceding Schreiber's arrest, accompanied Schreiber and the officer to the station, allegedly learned there that Schreiber would not be charged with any offense, and returned with Schreiber and the officer to Schreiber's vehicle where Schreiber was released.

On March 6, 7 and 8, Multimedia broadcast a three-part series on drunk driving which prominently featured the apprehension, arrest and processing of Schreiber. His alleged depiction in the series as a drunk driver prompted Schreiber and his wife (collectively, "plaintiffs") to institute an action against defendants seeking compensatory and punitive damages for defamation, interference with Schreiber's right to privacy, emotional distress and loss of consortium.

Along with their complaint, plaintiffs filed interrogatories, a request for admissions, and a request for the production of documents and things. In August 1985, when defendants failed to respond to these discovery requests in a manner satisfactory to plaintiffs, plaintiffs filed a motion to compel, seeking compulsory disclosure of, *inter alia*: (1) videotape of persons recorded other than Schreiber; (2) notes, memoranda and other documentation relevant to Schreiber's arrest and processing or to defendants' decision to broadcast; (3) videotape of the arrest and processing of Schreiber; and (4) a transcription of the commentary of Robinson used in the broadcast. On November 7, the trial court granted plaintiffs' motion to compel and notified the parties of its disposition by postcard. Defendants responded with a motion for an *in camera* inspection of the material sought to be discovered and for reconsideration of the court's order to compel. On June 3, 1986, the court conducted an *in camera* inspection of the subject material and, by entry dated July 7, 1986, ordered defendants to produce the requested material upon its determination that the material was relevant and not privileged and thus discoverable under Civ. R. 26.

From that order, defendants have taken the instant appeal in which they contend, in a single assignment of error, that the trial court erred in granting plaintiffs' motion to compel when the news media enjoy a qualified privilege against compelled disclosure of their editorial processes and plaintiffs failed to demonstrate the heightened degree of relevance and necessity which would warrant compelled disclosure of the requested material. We find this contention to be feckless.

Civ. R. 26 provides in relevant part:

"(B) Scope of discovery. Unless otherwise ordered by the court in accordance with these rules, the scope of discovery is as follows:

"(1) In general. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

The rule thus makes liberal provision for discovery regarding any matter provided that the matter is not privileged, is relevant to the subject

matter of the pending action, and either would be admissible at trial or "appears reasonably calculated to lead to the discovery of admissible evidence."

Defendants, in resisting discovery, have invoked their rights to free speech and freedom of the press as guaranteed under the First Amendment to the United States Constitution and Section 11, Article I of the Ohio Constitution. The United States Supreme Court in *Herbert* v. *Lando* (1979), 441 U.S. 153, addressed the issue of whether the First Amendment affords news media defendants in a defamation action a privilege against compelled disclosure of their editorial processes and concluded that it did not. The court in *Herbert* held that a public-figure plaintiff, who has instituted a defamation action alleging that a member of the press has circulated damaging falsehoods, is not barred by the First Amendment guarantees of free speech and freedom of the press from inquiry into the editorial processes of those responsible for publication when such inquiry could produce evidence material to a critical element of his cause of action.

Defendants concede that the court in *Herbert* denied the establishment of an absolute First Amendment privilege. They assert, however, that federal and state courts have found in the First Amendment and in comparable provisions of their respective state constitutions a "qualified privilege" which serves to protect the news media from compelled disclosure of their sources, confidential or nonconfidential, and their source material by imposing upon the party seeking discovery the burden of demonstrating an enhanced degree of relevance and necessity. See, *e.g., Lauderback* v. *American Broadcasting Companies, Inc.* (N.D. Iowa 1982), 8 Med. L. Rptr. 2407, reversed on other grounds (C.A. 8, 1984), 741 F. 2d 193, certiorari denied (1985), 469 U.S. 1190; *Fawley* v. *Quirk* (July 17, 1985), Summit App. No. 11822, 11 Med. L. Rptr. 2336; *Senear* v. *Daily Journal American* (1980), 27 Wash. App. 454, 618 P. 2d 536.[2] Defendants thus contend that the state and federal constitutional guarantees of free speech and a free press bar discovery of the subject aspects of their editorial processes in the absence of some demonstration by plaintiffs that the material sought to be discovered is (1) highly relevant, (2) critical to the maintenance of their claim, and (3) unobtainable through other sources.

The authorities cited by defendants in support of their assertion of a qualified privilege are instructive but in no way binding upon this court. The District Court for the Northern District of Iowa in *Lauderback, supra,* held that the First Amendment guarantee of freedom of the press affords a reporter a qualified privilege against compelled disclosure of source materials, including outtakes. The court noted, however, at 2408, that the determination of whether a qualified privilege arises in a given situation entails an *ad hoc* "balancing [of] the particular interests of the press in protecting the confidentiality of sources or maintaining the free flow of information in general considering the ap-

---

[2] On appeal from the court of appeals' decision in *Senear,* the Washington Supreme Court declined to find in the First Amendment a privilege, qualified or otherwise, protecting confidential news sources, but affirmed the decision of the court of appeals upon its determination that the circumstances warranted the imposition of a common-law privilege. *Senear* v. *Daily Journal American* (1982), 97 Wash. 2d 148, 641 P. 2d 1180.

plicability of these interests to the facts at hand, versus the interest of a party in obtaining information necessary to pursue his claim." The Court of Appeals for Summit County similarly held in *Fawley, supra,* that a newspaper reporter enjoys a qualified privilege protecting disclosure of non-confidential sources of information. The persuasiveness of the decision in *Fawley* is tempered, however, by the cogent concurring opinion of the court's presiding judge in which he joined in the court's ultimate disposition, but declined to engage in judicial legislation by extending to nonconfidential sources and information the qualified privilege which has emerged under R.C. 2739.12 to protect newspersons against compelled disclosure of confidential sources. *Id.* at 10, 11 Med. L. Rptr. at 2339 (Mahoney, P.J., concurring). Thus, the issue of whether the federal or state constitutional guarantees of free speech or freedom of the press confer upon the instant defendants a qualified privilege against compelled disclosure of their editorial processes under the circumstances extant remains open to interpretation.

We do not, however, reach that issue. As we noted *supra,* the court below, following its *in camera* inspection, ordered defendants to produce the material sought to be discovered upon its determination that the material was relevant and not privileged. Defendants on appeal contend that the material is shielded from compelled disclosure by a qualified privilege and that plaintiffs failed to demonstrate the heightened degree of relevance and necessity required to overcome the privilege. The determination of whether a qualified privilege applies in a given situation entails an *ad hoc* balancing of the interests at stake. *Lauderback, supra,* at 2408. Similarly, the determination of

the circumstances under which the privilege is required to yield must be made on an *ad hoc* basis. *Id.* at 2408. These determinations lie within the sound discretion of the trial court and will not be disturbed unless it can be demonstrated that the court abused its discretion. *Fawley, supra,* at 5-6, 11 Med. L. Rptr. at 2338. Defendants have failed to make a transcript of the proceedings at the *in camera* hearing a part of the record before us. In the absence of some demonstration that the trial court erred in its determination that the subject material was not privileged, we are constrained to find no abuse of discretion in the court's order compelling defendants' production of the requested material. We, therefore, overrule defendants' sole assignment of error and affirm the judgment of the court below.

*Judgment affirmed.*

SHANNON, P.J., DOAN and UTZ, JJ., concur.